# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## Case No. 24-1364

SAM A. ANTAR

*Plaintiff / Appellant*

**v.**

THE BORGATA HOTEL CASINO AND SPA, LLC; B ONLINE CASINO;
BETMGM, LLC; MGM RESORTS INTERNATIONAL, INC.; ENTAIN PLC;
JOHN DOES 1-10; MARY DOES 1-10; and XYZ CORPORATIONS 1-10

*Defendants / Appellees*

APPEAL FROM THE ORDER DATED JANUARY 31, 2024 OF THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY AT
DOCKET NO. 22-05785 DISMISSING PLAINTIFF'S CLAIMS IN THEIR
ENTIRETY FOR FAILURE TO STATE A CLAIM

## BRIEF OF APPELLANT SAM A. ANTAR

Matthew R. Litt
NJ Bar 007452003
Litt Law, LLC
789 Farnsworth Avenue
Bordentown, New Jersey 08505
(908) 902-7071
MLitt@LittLaw.net

# **TABLE OF CONTENTS**

Jurisdictional Statement…………………………………………………..    5

Statement of the Issues……………………………………………………    6

Statement of Related Cases and Proceedings…………………………..    10

Statement of the Case……………………………………………………..    11

Summary of Argument……………………………………………………    19

Argument……………………………………………………………………    23

    I.      Standard of Review of All Issues on Appeal…………….    23

    II.     The District Court Erred by Dismissing the Appellant's Claim Without any "Direct and Unavoidable" Conflict with the CCA – and Erred by Failing to Apply the Presumption Against Preemption
        ………………………………………………………    24

    III.    The District Court Erred by Dismissing Appellant's Common Law Claims Based on a Requirement for Explicit Authorization and by Misapplying Hakimoglu and Taveras
        ………………………………………………………    34

Conclusion…………………………………………………………………..    41

Combined Certifications…………………………………………………….    42

# TABLE OF AUTHORITIES

**Cases**

Bandler v. Landry's Inc., 464 N.J.Super. 311 (App.Div. 2020)............. 7, 25, 26, 27

Bell Atl. Corp. v. Twombly 550 U.S. 544 (2007) ....................................23

Campione v. Adamar of N.J., 155 N.J. 245 (1988) .................................... 33, 34, 35

Decker v. Bally's Grand Hotel Casino, 280 N.J. Super. 217 (App.Div. 1994) 30, 32

Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173 (3d Cir. 2000)7, 30, 31

Flora v. County of Luzerne, 776 F.3d 169 (3d Cir. 2015).......................................23

Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227 (3d Cir. 1994) ............ 34, 35, 36

Hakimoglu v. Trump Taj Mahal Assocs., 70 F.3d 291 (3d Cir. 1995) . 8, 34, 35, 36, 37, 40, 41

Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993) ...........................................41

Krieger v. Bank of Am., N.A., 890 F.3d 429 (3d Cir. 2018)...................................23

Lemelledo v. Beneficial Management Corp., 150 N.J. 255 (1997)...... 25, 26, 27, 30

Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222 (D.C.N.J. 1994) .....7, 30, 31

Richardson v. Standard Guar. Ins. Co., 371 N.J. Super. 449 (App. Div. 2004)......28

Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014) ....................................................23

Smerling v. Harrah's Entertainment, Inc., 389 N.J. Super. 181 (App.Div. 2006) 27, 28, 29, 30, 31, 32, 33, 35, 37

Taveras v. Resorts Int'l Hotel, Inc., 2008 U.S. Dist. LEXIS 71670 (D.N.J. Sept. 19, 2008) .................................................................... 4, 9, 34, 37, 38, 39, 40, 41


**Code, Rules, and Statutes**

28 U.S.C. 1291 .........................................................................................5

28 U.S.C. 1332(a)(1) ...............................................................................5

28 U.S.C. 1441(a) ....................................................................................5

28 U.S.C. 1446 .........................................................................................5

F.R.C.P. 12(b)(2).....................................................................................11

F.R.C.P. 12(b)(6)............................................................................. 5, 10, 11, 23

N.J.A.C. 13:69O-1.2(x)..................................................................... 14, 38

N.J.S.A. 5:12-100(h) ........................................................................ 30, 31, 32

New Jersey Casino Control Act ("CCA")……………………………*passim*

New Jersey Consumer Fraud Act ("CFA")………………………….*passim*

**Other Authorities**

American Psychiatric Association's Diagnostic and Statistical Manual 4..............39

American Psychiatric Association's Diagnostic and Statistical Manual 5..............39

Clinical and Research Implications of Gambling Disorder in DSM-5, Jeremiah Weinstock and Carla J. Rash, Current Addiction Reports (Jun. 13, 2014)..........40

## JURISDICTIONAL STATEMENT

### Jurisdiction of the District Court

The District Court had diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1). Suit was initially filed by the Appellant in New Jersey Superior Court, and removed by Appellees pursuant to 28 U.S.C. 1441(a) and 1446.

### Jurisdiction of the Third Circuit Court of Appeals

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 1291 because the Letter Order of the District Court dismissing Appellant's claims in their entirety pursuant to F.R.C.P. 12(b)(6) for failure to state a claim to relief was a final decision of the District Court.

This appeal was timely filed. The District Court entered its Letter Order on January 31, 2024, and Appellant filed his Notice of Appeal from that order on February 26, 2024.

## STATEMENT OF THE ISSUES

1) Whether the District Court erred by dismissing Appellant's New Jersey Consumer Fraud Act ("CFA") claim without actual conflict with the New Jersey Casino Control Act ("CCA")

*The issue of conflict was generally addressed in the District Court's Letter Order at App. 11-12.*

2) Whether the District Court erred by dismissing Appellant's CFA claim based on the New Jersey Casino Control Commission's ("CCC") silence regarding the business practices underlying this case

*The issue was implicated by the District Court's Letter Order at App. 12, 14.*

3) Whether a plaintiff's CFA claim is properly preempted in every case involving a New Jersey casino

*The issue was mentioned in the District Court's Letter Order at App. 13.*

4) Whether Appellant's CFA claim was entitled to a presumption against preemption

*The issue of the presumption against preemption was not addressed in the District*

*Court's Letter Order.*

5) Whether the District Court erred in dismissing the Plaintiff's CFA claim

*This issue was implicated by the entirety of the District Court's Letter Order at*

*App. 9-15.*

6) Whether the District Court erred in limiting the application of <u>Bandler</u> to issues

of conventional casino advertising

*The issue was implicated by the District Court's Letter Order at App. 11-12.*

7) Whether agency expertise is required from the CCC where compliance with a

CCA regulation is not an issue in the lawsuit

*The issue was not addressed in the District Court's Letter Order.*

8) Whether the District Court erred in its reliance on <u>Doug Grant, Inc.</u> in support of

its dismissal of Appellant's CFA claim

*The issue was implicated by the District Court's Letter Order at App. 11-13.*

9) Whether the District Court erred in its reliance on <u>Marcangelo</u> in support of its dismissal of Appellant's CFA claim

*The issue was implicated by the District Court's Letter Order at App. 11-12.*

10) Whether the District Court erred in dismissing Appellant's common law claim based on an absence of explicit authorization

*The issue was implicated by the District Court's Letter Order at App. 13-15.*

11) Whether the District Court erred in dismissing the Appellant's common law claim without any actual conflict with the CCA

*The issue was implicated by the District Court's Letter Order at App. 13-15.*

12) Whether the Appellant's common law claim should have been dismissed merely because the claim involves a casino

*The issue was mentioned in the District Court's Letter Order at App. 13.*

13) Whether the District Court erred in its reliance on <u>Hakimoglu</u> in support of dismissal of the Appellant's common law claim

*The issue was implicated by the District Court's Letter Order at App. 13-15.*

14) Whether <u>Hakimoglu</u> has any precedential value in the instant matter

*The issue was implicated by the District Court's Letter Order at App. 13-15.*


15) Whether the District Court erred in its reliance on <u>Taveras</u> in support of dismissal of the Appellant's common law claim

*The issue was implicated by the District Court's Letter Order at App. 13-15.*


16) Whether <u>Taveras</u> has any precedential value in the instant matter

*The issue was implicated by the District Court's Letter Order at App. 13-15.*


17) Whether the District Court's unstated decision to deny Appellees' motion to compel arbitration and the reasons therefore should have been made explicit in the Letter Order

*The issue was absent from the District Court's Letter Order.*

## **STATEMENT OF RELATED CASES and PROCEEDINGS**

This case has not previously been before the Third Circuit. No related case or proceeding is pending or about to be presented to any state or federal court or agency.

## STATEMENT OF THE CASE

### Statement of Relevant Procedural History

The Appellees filed Motions to Compel Arbitration or, in the alternative, to Dismiss under F.R.C.P. 12(b)(2) or 12(b)(6) on June 9, 2023. App. 3 at Docket #50-51. Two sets of motion papers were filed -- one by Appellee BetMGM, LLC, and one by Appellees MGM Resorts International, Inc. and The Borgata Hotel Casino and Spa. The Appellant filed joint opposition to the motions on June 30, 2023. App. 3 at Docket #52. Appellees filed reply briefs on July 14, 2023. App. 3 at Docket #53-54. All parties requested oral argument. *See* App. 3 at Docket #55.

On December 7, 2023, the District Court issued a Letter Order directing Appellant to show cause why the action should not be dismissed for lack of subject matter jurisdiction as the result of a possible loss of diversity jurisdiction because the Appellant changed residences from New York to New Jersey since the commencement of this case. App. 3 at Docket #56. Both Appellant and Appellees submitted responses as requested on December 14, 2023 and December 21, 2023 respectively. App. 3 at Docket #57-58. No decision was transmitted to the parties on this issue.

On January 31, 2024, the District Court issued the Letter Order at issue in the instant appeal, dismissing the Appellant's claims in their entirety pursuant to F.R.C.P. 12(b)(6). App. 3 at Docket #59. The Letter Order did not address the

Motions to Compel Arbitration, despite extensive briefing from all parties on those issues. The Court did not permit oral argument.

<u>Statement of Relevant Facts</u>
*All paragraph numbers below refer to the paragraphs of the Appellant's Amended Complaint*

The Appellant / Appellant Sam Antar ("Appellant") was, and exhibited fundamental symptoms of being, a problem gambler at all times relevant to this action. App. 1 (Vol. 2) at ¶1. Problem gambling is classified by both the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders and World Health Organization's International Classification of Diseases as an addiction disorder. App. 1 (Vol. 2) at ¶2. The Appellees Borgata Hotel Casino and Spa, LLC, B Online Casino, Bet MGM LLC, MGM Resorts International Inc., and Entain PLC (collectively "Appellees") were trained to recognize the nature and symptoms of problem gambling behavior at all times relevant to this action. App. 1 (Vol. 2) at ¶3.

Appellees' involvement in the Appellant's addiction was not passive; Appellees knew Appellant was a problem gambler because from approximately June 2019 through January 2020, they engaged with him through email, telephone, and text message on an almost daily basis. App. 2 (Vol. 2) at ¶¶4-5. For example, from June 2019 through January 2020, Appellant and Appellees exchanged over

1,800 text messages which included relentless financial incentives, gifts, and various other forms of manipulation. App. 2 (Vol. 2) at ¶¶6, 8.

Appellant ultimately gambled close to thirty million dollars with Appellees in 2019 through a series of over 100,000 online bets, as his gambling addiction disorder grew worse and worse; the Appellees' relentless enticements of the Appellant to gamble when they knew he suffered and/or exhibited the signs of a problem gambler was an unconscionable commercial practice, in violation of the New Jersey Consumer Fraud Act. App. 2 (Vol. 2) at ¶¶9-10.

The Borgata Hotel Casino and Spa, LLC ("the Borgata") is operated by MGM Resorts International, Inc. App. 3 (Vol. 2) at ¶14. BetMGM, LLC ("BetMGM") is an online gaming and sports betting company that maintains exclusive access to all of MGM's online gaming. App. 3 (Vol. 2) at ¶16. MGM Resorts International, Inc. ("MGM RESORTS") is a hospitality and entertainment company that operates several online betting brands including the Borgata. App. 3 (Vol. 2) at ¶17.

Quinton Hogan ("Hogan") and Jerry Liang ("Liang") were each VIP Account Managers employed by the Appellees Borgata and BetMGM, responsible for maximizing the profits from VIP online gaming and gambling customers. App. 4 (Vol. 2) at ¶¶21-22. In or about 2019, the Borgata invited Appellant to be designated with "NOIR" VIP status, the highest available rewards status offered by

Appellees. App. 4-5 (Vol. 2) at ¶¶24-25. The NOIR program provided Appellees precise records and data about Appellant and other patrons' online gambling patterns and behavior. App. 5 (Vol. 2) at ¶26. NOIR customers such as Appellant are even assigned a dedicated VIP host by Appellees. App. 5 (Vol. 2) at ¶27.

Hogan and Liang were assigned by the Appellees to be the Appellant's dedicated VIP host; Hogan from approximately June 7, 2019 through November 27, 2019, and Liang from approximately December 16, 2019 through January 16, 2020. App. 5 (Vol. 2) at ¶28. Hogan and Liang saw to it that in 2019, Appellant's online gambling activity exceeded $24 million, including more than $5 million in a 16-day period in January 2020.  From May 2019 to January 2020, Appellant placed more than 100,000 online bets. App. 5 (Vol. 2) at ¶29.

Appellees were obligated by N.J.A.C. 13:69O-1.2(x) to implement training for employees who have direct contact with patrons via phone, e-mail, electronic chat, or other means on the recognition of the nature and symptoms of problem gambling behavior, and how to assist players in obtaining information regarding help for a gambling problem. App. 5 (Vol. 2) at ¶30. Appellees were at all times relevant in full compliance with N.J.A.C. 13:69O-1.2(x). App. 5 (Vol. 2) at ¶31.

Such training occurs at the start of an employee's employment, and at regular intervals thereafter. App. 5 (Vol. 2) at ¶32. Hogan and Liang were each

employees with direct contact with patrons via phone, e-mail, electronic chat, or other means. App. 6 (Vol. 2) at ¶¶33-34.

The amount of money Appellant gambled with the Appellees between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling; at all times relevant, Appellees knew how much money the Appellant was gambling, and knew it was a fundamental symptom of problem gambling. *See* App. 6-7 (Vol. 2) at ¶¶37-43.

The frequency with which Appelant gambled with the Appellees between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling; at all times relevant, Appellees knew the frequency with which Appellant gambled, and knew it was a fundamental symptom of problem gambling. App. 7 (Vol. 2) at ¶¶44-50.

Appellant's "chasing" of his losses with the Appellees between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling; at all times relevant, Appellees knew that Appellant frequently "chased" his losses, and knew it was a fundamental symptom of problem gambling. App. 7-8 (Vol. 2) at ¶¶51-57.

The Appellant's preoccupation with gambling, including but not limited to thinking of ways to get money with which to gamble, between May 2019 and January 2020 was a fundamental and visible symptom of problem gambling; at all

times relevant, Appellees knew of Appellant's preoccupation with gambling, and knew it was a fundamental symptom of problem gambling. App. 8-9 (Vol. 2) at ¶¶58-64.

The Appellant's lying to conceal the extent of his involvement with gambling and reliance on others to provide money to relieve his desperate financial situations caused by gambling was a fundamental and visible symptom of problem gambling; beginning with service of a *Subpoena Duces Tecum* on Appellees by the New Jersey Division of Criminal Justice on August 15, 2019, Appellees were on notice that Appellant was lying to conceal the extent of his involvement with gambling and/or relying on others to provide money to relieve his desperate financial situations caused by gambling, and that it was a fundamental symptom of problem gambling. App. 9-10 (Vol. 2) at ¶¶65-71.

At all times relevant, Appellees knew that a "cooling-off" period away from gambling was a recognized and fundamental way to help a problem gambler with his or her addiction, yet Liang's resume boasts of his ability to "convert lapsed VIP players." App. 10 (Vol. 2) at ¶¶73, 76-77. "Converting lapsed VIP players" is the targeting of problem gamblers for a premature termination of their cooling-off period; Appellees knew and rewarded Liang for "converting lapsed VIP players." App. 10 (Vol. 2) at ¶¶77-78. Liang's and Hogan's job description also included preventing VIP players, including Appellant, from lapsing in the first place. App.

10-11 (Vol. 2) at ¶¶77-78; 83-84. Liang's and Hogan's jobs also included them maximizing the amount of money gamblers such as the Appellant gambled, and developing quasi-personal relationships with VIPs so that gamblers and Appellant trusted them. App. 11 (Vol. 2) at ¶¶85-88; 91-92.

Between June 7, 2019 and January 16, 2020, the Appellant and Appellees exchanged more than 1,800 text messages. App. 12 (Vol. 2) at ¶94. Of the 223 days between June 7, 2019 and January 16, 2020, the Appellant and Appellees communicated on more than half -- at least 126. App. 12 (Vol. 2) at ¶95. The communications frequently began first thing in the morning, and continued throughout regular working hours, the subject of which was almost always financial bonuses, deposit incentives, and credits for past gambling losses. App. 12 (Vol. 2) at ¶¶96-97.

The Complaint provides precise details of approximately 50 specific enticements, often offering incentives in the thousands of dollars, from the Appellees to the Appellant to deposit money and continue gambling with the intent to nurture, expedite, and exacerbate the gambling addiction they knew Appellant suffered from. These enticements were sent directly to the Appellant's phone via text message from Hogan and Liang. *See* App. 12-23 (Vol. 2) at ¶¶98-219.

As one example, the Appellees sent Appellant a text message on July 9, 2019 asking if he wanted a $5,000 deposit match *per week*. App. 13 (Vol. 2) at

¶110. As another example, 47 text messages were exchanged between the Appellees and Appellant on a single day after Appellant told Appellees he intended to stop gambling. App. 14 (Vol. 2) at ¶123. As another example, Appellees chided Appellant on August 12, 2019: "[i]f you made deposits like you used to I can give you more…[y]our (sic) killing me here." App. 15 (Vol. 2) at ¶135. As another example, the Appellees sent the Appellant a text message on September 4, 2019 saying: "Hey Sammy I need you to deposit more." On January 6, 2020, the Appellees told Appellant: "Your bonus percentage is getting out of control and I'm going to need to keep it down" to encourage Appellant to deposit more money. App. 21 (Vol. 2) at ¶196.

The Appellees knew the Appellant was a problem gambler, and targeted him for these enticements because they knew he was vulnerable as a problem gambler. App. 24 (Vol. 2) at ¶¶221-226. The Appellees' creation, nurturing, expediting, and/or exacerbation of the Appellant's gambling addiction was the proximate cause, in whole or in part, of damages to the Appellant including, but not necessarily limited to, pecuniary losses in an amount to be determined at trial, inclusive of monies lost, severe emotional distress, and the complete devastation of the Appellant's professional, personal, and financial life. App. 24 (Vol. 2) at ¶227.

## SUMMARY OF ARGUMENT

New Jersey law is clear that the Appellant was entitled to a presumption against preemption of his New Jersey Consumer Fraud Act ("CFA") claim, which he did not receive.

There is no dispute that the New Jersey Casino Control Commission ("CCC") has broad authority through the New Jersey Casino Control Act ("CCA") to regulate nearly any aspect of New Jersey's casino industry. But the CCA's silence on an aspect of gambling which it might otherwise have the authority to regulate is dispositive of the absence of conflict with other statutory and common law, and dictates a finding *against* preemption. New Jersey Courts have considered and expressly rejected the notion that every claim involving a casino is subject to preemption -- preemption is only appropriate in the face of an actual, direct and unavoidable conflict with the CCA, and the District Court identified no such conflict.

In every case in which the CFA or common law was held to be preempted by the authority of the CCC, it was because the matter implicated an aspect of gambling that the CCC had used its authority to regulate. As discussed at full length herein, the cases cited by the District Court in support of preemption involve the intricacies of Blackjack gameplay, slot machine game play and advertising, and alcohol service -- all of which are subject to explicit and

comprehensive regulation under the CCA. Dismissal of the instant matter would be an unprecedented application of the agency's primary, not exclusive, jurisdiction over New Jersey's casinos, and the first time the CCC's declination to address an entire area is found to thwart a consumer from pursing his rights under the CFA and common law.

The District Court's dismissal of the Appellant's Complaint on the basis that New Jersey's legislature has not yet seen fit to protect the Appellant from the business practices at issue in this matter is an exceedingly narrow view, wholly inconsistent with the spirit and long line of precedent interpreting the CFA. New Jersey's legislature protects consumers like the Appellant from the unconscionable business practices of business entities like the Appellees through one of the most expansive and progressive consumer protection acts in the United States. Unless there is an *actual* conflict between the CFA and CCA, there simply is no reason or precedent for the removal of that protection for no reason other than that the consumer is a gambler and the business is a casino.

Moreover, preemption of the CFA and common law is not required or appropriate here because the adjudication of this matter does not implicate the CCC's agency expertise in any way. This suit does not claim that Appellees violated the CCA, and so no interpretation on whether or not a violation occurred is involved. The Appellant's sole reference to the CCA in this matter is the

Appellant's acknowledgement that the Appellees were in full compliance with the requirement that its employees were trained to recognize the signs of addicted gambling behavior. The Appellant's allegation of compliance evidencing that the Appellees knew or should have known he was an addicted gambler may require additional information through discovery and perhaps testimony from an addiction expert, but certainly requires no interpretation of the CCA. There simply is no "highly sophisticated or technical" question requiring agency interpretation here.

The key issue in this litigation is a straightforward jury question: whether it is an unconscionable business practice for an online casino operator to target a consumer with enticements to gamble when the operator knows that consumer suffers from gambling addiction. The question is not whether a casino operator is liable for passively permitting a compulsive gambler into its casino, but rather the active and aggressive enticement of an addicted gambler with relentless, near-daily, personal and real-time text message enticements from a casino host employed and rewarded by Appellees for squeezing as much money from the addicted gambler as they can until the consumer hits rock bottom.

The case law cited by the District Court's Letter Order in support of dismissal is of dubious precedential value for numerous reasons. Among these reasons is that the cases were decided decades ago in the prehistoric time before every consumer held instant access to a casino on their smartphone, and before

VIP hosts were enticing gamblers instantly and incessantly though text messages. Moreover, psychiatry and the law has evolved to reflect a drastically more developed understanding of gambling addiction disorder. The Courts deciding the cases cited in the District Court's Letter Order could not have even contemplated, and certainly did not address, the business practices challenged in the instant matter.

## **ARGUMENT**

### **I. Standard of Review for All Issues on Appeal**

The Third Circuit exercises de novo review of a District Court's dismissal for failure to state a claim. *See* Krieger v. Bank of Am., N.A., 890 F.3d 429, 437 (3d Cir. 2018) *citing* Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2014). As does the District Court, the Court of Appeals accepts all facts alleged in the complaint as true, and construes those facts in the light most favorable to the nonmoving party. Krieger at 437 ("Like the District Court, we 'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party...'") *quoting* Flora v. County of Luzerne, 776 F.3d 169, 175 (3d Cir. 2015).

The Court of Appeals ultimately "determine(s) whether the complaint pleads 'enough facts to state a claim to relief that is plausible on its face.'") Krieger at 437 *quoting* Bell Atl. Corp. v. Twombly 550 U.S. 544, 570 (2007). A Complaint should only be dismissed when it "lacks facial plausibility." Twombly at 555-56. ("Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility.")

## II. The District Court Erred by Dismissing the Appellant's CFA Claim Without any "Direct and Unavoidable" Conflict with the CCA -- and Erred By Failing to Apply the Presumption Against Preemption

There is no precedent for preemption of a plaintiff's CFA claim in the absence of an actual conflict with a regulation of the CCC. The cases cited by the District Court in support of preemption only found conflict after identifying the specific CCA regulation governing that plaintiff's claims. The District Court's dismissal of the Appellant's CFA claims in the instant matter based on a complete absence of regulation is a substantial departure from the precedent addressing preemption both in and outside the context of the CCA. Preemption based on an absence of regulation by the CCC would mean every CFA and common law claim involving a casino would automatically be preempted -- a proposition on several occasions rejected by New Jersey's appellate courts. The CCC of course has the authority to govern the business practices challenged in the instant matter -- but the fact they chose not to do so should have been dispositive of a finding that there was no conflict, and therefore no preemption. The proposition that the CFA is reflexively preempted by anything touching upon the casino gambling industry has already been squarely addressed and soundly rejected by multiple New Jersey appellate courts.

<u>Presumption Against Preemption of the Consumer Fraud Act</u>

The Appellant's CFA claim was entitled to a presumption against preemption by the CCA which the District Court did not merely fail to apply, but failed to even acknowledge.

The New Jersey Supreme Court described the presumption against a finding of preemption of the CFA in the absence of actual conflict in <u>Lemelledo v. Beneficial Management Corp.</u>, 150 N.J. 255, 264 (1997). "In determining whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions, it should ordinarily be assumed that the CFA applies to the covered practice." <u>Lemelledo</u> at 268.

The Supreme Court explained: "We are loathe to undermine the CFA's enforcement structure, which specifically contemplates cumulative remedies and private attorneys general, by carving out exemptions for each allegedly fraudulent practice that may concomitantly be regulated by another source of law. The presumption that the CFA applies to covered practices, even in the face of other existing sources of regulation, preserves the Legislature's determination to affect a broad delegation of enforcement authority to combat consumer fraud." <u>Id</u>. at 270. This analysis and the presumption against preemption was applied in the context of the CCA in <u>Bandler v. Landry's Inc.</u>, 464 N.J.Super. 311, 320 (App.Div. 2020).

The Letter Order's circumscription of <u>Bandler</u> to advertising is far too limited a reading of that case. <u>Bandler</u> maintains the far broader proposition set forth in <u>Lemelledo</u> that the CFA is only preempted by another source of regulation where there is a "'direct and unavoidable conflict between application of the CFA and application of the other regulatory scheme.'" <u>Ibid</u>. <u>Bandler</u> at 321 *quoting* <u>Lemelledo</u> at 270. There is nothing in that opinion, explicit or explicit, restricting the Appellate Division's holding to advertising.

In its analysis of Appellees' claim that the CCA preempted the CFA, the Appellate Division began with the principle: "'[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud.'" <u>Bandler v. Landry's Inc.</u>, 464 N.J.Super. 311, 320 (App.Div. 2020) *quoting* <u>Lemelledo v. Beneficial Management Corp.</u>, 150 N.J. 255, 264 (1997).

This legislative purpose requires the application of a presumption that the "'CFA applies to covered practices, even in the face of other existing sources of regulation, which preserves the Legislature's determination to affect a broad delegation of enforcement authority to combat consumer fraud.'" <u>Bandler</u> at 321 *quoting* <u>Lemelledo</u> at 270.

<u>Absence of Direct and Unavoidable Conflict or Need for Agency Expertise</u>

In reversing the Superior Court's dismissal of plaintiff's CFA claim, the <u>Bandler</u> Court held there was no conflict between the CFA and the Casino Control Act, and therefore no preemption because:

> No special expertise vested in the Division (of Gaming Enforcement) is required to resolve the question. There is no 'direct and unavoidable conflict' between the CFA and CCA provisions, let alone a 'patent and sharp' conflict as <u>Lemelledo</u> requires. There is no significant risk that the CFA and CCA 'as applied, will work at cross-purposes.' We discern no legislative intent to preempt plaintiff's CFA or common law claims in Superior Court. <u>Bandler</u> at 324.

The <u>Lemelledo</u> test utilized by <u>Bandler</u> requires:

> In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied...that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. <u>Ibid</u>.

The conflict must be precise, and not hypothetical: "[w]e stress that the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility." <u>Ibid</u>; *see also* <u>Smerling v. Harrah's Entertainment, Inc.</u>, 389 N.J. Super. 181, 193 (App.Div. 2006) ("Thus, to the extent, if at all, the plaintiffs'

CFA implicate advertising regulations under the CCA, we discern 'no direct and unavoidable conflict' between the dual regulatory schemes despite the trial court's speculative and unsupported finding to the contrary...'")

The Appellate Division in <u>Smerling</u> held that plaintiffs' claims were not preempted by the CCA, finding "[t]here is nothing highly sophisticated or technical about defendants' two promotional schemes. There is no reference in either advertisement to the heavily regulated rules of the game or gaming equipment." <u>Id</u>. at 192. The Court continued, "[s]imply put, the two advertisements are bereft of any content which calls upon agency expertise or prerogative to which a court need defer...[i]ndeed, the agency has no special preemptive competence to judge the fairness of these ads." <u>Id</u>. at 193. Rather, such analysis is "well within the conventional experience of courts to address consumer fraud issues." <u>Ibid</u>. *citing* <u>Richardson v. Standard Guar. Ins. Co.</u>, 371 N.J. Super. 449, 479 (App. Div. 2004).

The principles rejecting preemption of the CFA in all but clear instances of cross-purpose described in <u>Smerling</u> are not limited to conventional casino advertising. "Stated somewhat differently, does the CCC, by virtue of its comprehensive regulation over New Jersey's casino industry, have exclusive jurisdiction over all matters of casino advertising so as to bar a patron's statutory consumer fraud claims in this instance. We answer in the negative, reverse the trial court's dismissal, and reinstate plaintiffs' complaint." <u>Smerling</u> at 184.

Smerling closed its opinion by noting the absurdity which would result from broad preemption of the CFA: "[i]ndeed, any other result would leave plaintiffs remediless since the Casino Control Act clearly does not empower the CCC to award damages in private matters." Id. at 193.

The District Court's Letter Order identifies no direct and unavoidable conflict between the CFA and the CCA in the instant matter. Rather, the Letter Order finds precisely the generalized conflict that would remove the critical protections of the CFA from any case involving a casino in any way. This approach is manifestly inconsistent with the law in this area, and would effectually grant the CCC exclusive jurisdiction the Legislature never intended it to have.

Moreover, there is nothing highly technical or sophisticated requiring the CCC's interpretation here. The Appellant does not allege violation of the CCA or question Appellees' compliance in any way -- the only reference to the CCA in the Complaint is the Appellant's acknowledgement that Appellees were in full compliance. With the Appellees' compliance a complete non-issue, there simply is nothing for the CCA to interpret or opine on. Whether the Appellees' business practices were unconscionable under the CFA is well within the conventional experience of the court, without any call for preemptive agency expertise.

Finally, as in Smerling, the District Court's finding of preemption in the instant matter would remove the protections of the CFA from the Appellant,

leaving him and any gambling consumer him without a remedy against the practice

of any casino, irrespective of its unconscionability. Such would be anathema to the

stated and steady legislative purpose of the CFA.

### Appropriate Applications of Preemption to CCA Regulated Areas of Gameplay, Gaming Equipment, and Gameplay Related Advertising

Applying the Lemelledo presumption and test to its analysis of potential

conflict between the CFA and CCA, Smerling differentiated those cases where the

CCA was properly found to preempt, explaining:

> Unlike the claims asserted in this case, those brought in
> Decker v. Bally's Grand Hotel Casino, 280 N.J. Super.
> 217 (App.Div. 1994), Doug Grant, Inc. v. Greate Bay
> Casino Corp., 232 F.3d 173 (3d Cir. 2000), and
> Marcangelo v. Boardwalk Regency Corp., 847 F. Supp.
> 1222 (D.C.N.J. 1994) all dealt with highly technical areas
> of the rules of other casino games, casino gaming
> equipment, or gaming-related advertising, which are the
> subject of comprehensive regulation by the CCC,
> N.J.S.A. 5:12-69, -70(f), -70(o), and consequently fall
> within the special expertise of the agency." Smerling v.
> Harrah's Entertainment, Inc., 389 N.J. Super. 181, 192
> (App.Div. 2006).

In Doug Grant, Inc., preemption was found where professional blackjack

card counters alleged the casino's countermeasures violated the CCA, despite the

CCA's specific authorization of such gameplay protocol. *See* Smerling at 191 ("the

Third Circuit held the Consumer Fraud Act did not apply to such a claim inasmuch

as the regulation of the game of blackjack and related gaming advertising fell within the exclusive jurisdiction of the CCC...[n]oting that the CCC's regulation of blackjack, including shuffling-at-will and related advertising 'is more extensive than the entire administrative regulation of many industries...'") *quoting* Doug Grant, Inc. at 180, 188-89. It was only for this reason that "in Doug Grant, there existed a 'real possibility of conflict' in the application of the dual regulatory schemes of consumer fraud and casino control.'" Smerling at 192 *quoting* Doug Grant, Inc. at 188.

In Marcangelo, the plaintiff sought a private right of action for violation of the CCC, alleging that the signage on the face of a slot machine was inadequate and failed to provide fair notice of the rules game. Id. at 1227 ("in essence, plaintiff seeks to imply a private right of action in favor of casino patrons...") Preemption was found because the CCA gives the CCC explicit exclusive authority "to pre-approve all aspects of a slot machine, including program, odds and signage, even before the slot machine is installed on the casino floor." Smerling at 190 *citing* Marcangelo at 1226-28.

"Clearly, the authority to determine the adequacy of machine signage is a matter entrusted to the CCC under N.J.S.A. 5:12-100(h), which allows the Commission to adopt regulations establishing 'such technical standards...as it may deem necessary to protect the player…'" Marcangelo at 1229. "Noting that the

matter dealt with gaming regulations, which are at the heart of the CCC's authority, the court held that a cause of action for deceptive signage was preempted by N.J.S.A. 5:12-133(b). "Such a preemptive legislative intent has been found in the CCC's exclusive control of the regulation of the rules of casino games and of the content of *gaming-related* advertising." <u>Smerling</u> at 190 (emphasis in original). <u>Decker</u> similarly found preemption based on the CCC's specific authority and regulation related to slot machine signage in a case where Appellant sued for violation of the CCA regarding the advertisement of a slot machine's progressive jackpot payout.

In every one of these cases dismissing Appellant's claims based on preemption, the Court searched for and found an actual conflict with the CCA involving regulated areas of gameplay, gaming equipment, or gameplay related advertising. None of these cases dismissed a plaintiff's cause of action based on the absence of CCA regulation or because it merely involved a casino.

## Primary Versus Exclusive Jurisdiction

There is no question that the CCC regulates New Jersey's casino industry, but that does not mean the CCC preempts every issue involving a casino. *See* <u>Smerling</u> at 193 ("To be sure, the CCC regulates all manner of casino advertising,

including presumably the ads in issue here. However, that does not mean the CCC has usurped the entire field.")

As did the Superior Court in Smerling, the District Court in the instant matter erred in blurring the distinction between an agency's exclusive or primary jurisdiction. Smerling at 187 ("Although the motion judge in this case seemed to use the terms 'primary' and 'exclusive' jurisdiction interchangeably, there is a meaningful difference.") When an agency has exclusive jurisdiction, the court's jurisdiction over the matter is automatically preempted. Ibid. But exclusive jurisdiction is never to be implied, it must be granted by the Legislature expressly. Ibid.

An agency's primary jurisdiction, on the other hand, is implicated only when a plaintiff's claim requires the expertise of the CCC for an interpretation of its regulations. See Smerling at 188 ("'To the extent that the resolution of a plaintiff's claim depends on an interpretation of the Act or administrative regulations, the CCC should have the first opportunity to provide that interpretation.'") *quoting* Campione v. Adamar of N.J., 155 N.J. 245, 264 (1988).

The CCC does not have exclusive jurisdiction over everything regarding the casino business -- they merely have primary jurisdiction. *See* Smerling at 188 ("'The pervasiveness of the regulatory scheme controlling the casino industry indicates that the Legislature intended to invest the CCC with primary jurisdiction

to regulate the casino industry.'") *quoting* <u>Campione</u> at 264; <u>Greate Bay Hotel &</u>

<u>Casino v. Tose</u>, 34 F.3d 1227, 1230 (3d Cir. 1994)(holding that the CCA did not

vest the CCC with exclusive jurisdiction over a gambler's claims against a casino

for his losses).

The District Court's Letter Order finding preemption in the CCC's silence

on the business practice underlying this case effectively grants the agency

exclusive jurisdiction which the Legislature never authorized or intended.

## III. The District Court Erred by Dismissing Appellant's Common Law Claims Based on a Requirement for of Explicit Authorization and by Misapplying <u>Hakimoglu and Taveras</u>

As described in the preceding section of this brief, there is no conflict, and

therefore no preemption, between the Appellant's claims in this matter and the

CCA. Without any conflict, there is no cognizable reason the ordinary standards of

common law negligence should not apply to the parties in this matter. The

Complaint alleges that Appellees breached their duty of care by using its product

and engaging in a business practice they knew or should have known was causing

harm to the Appellant, and that this business practice was, in whole or in part, the

actual and proximate cause of Appellant's damages -– these allegations are

sufficient to survive a Motion to Dismiss, whether the defendant is a casino or any

other business entity.

"Even in the context of New Jersey's highly regulated casino industry, the Court has held that the Legislature 'did not intent to prevent patrons from seeking vindication of common-law claims in the courts.'" <u>Smerling</u> at 189 *quoting* <u>Campione</u> at 266. "As <u>Campione</u> makes clear, courts are not ousted of jurisdiction over common law damage claims against casinos merely because the claims arise from gambling transactions." <u>Smerling</u> at 189 *citing* <u>Greate Bay Hotel & Casino v. Tose</u>, 34 F.3d 1227, 1230, 1234-35 (3d Cir. 1994). "The Legislature did not intend to prevent patrons from seeking vindication of common-law claims in the Courts." <u>Campione</u> at 264-65.

<u>Hakimoglu</u>

The District Court relies heavily on <u>Hakimoglu v. Trump Taj Mahal Assocs.</u>, 70 F.3d 291 (3d Cir. 1995) in support of dismissal, but that decision is manifestly distinguishable for the same reason as those cases finding preemption under the CFA -- it involves unavoidable conflict with a specific regulation. The issue in <u>Hakimoglu</u> was "whether under New Jersey law a casino patron may recover from a casino for gambling losses caused by the casino's conduct in serving alcoholic beverages to the patron and allowing the patron to continue to gamble after it becomes obvious that the patron is intoxicated." <u>Id</u>. at 292.

In a time before New Jersey Court Rules authorized certification of a question to the New Jersey Supreme Court,[1] the Third Circuit predicted that the New Jersey Supreme Court would not permit recovery in this scenario. Id. at 294 ("...we predict that the New Jersey Supreme Court would not permit recovery on claims such as those asserted by the plaintiff here.")

The Court's reasoning in Hakimoglu was specific to the service of alcohol, finding: "'[t]he State has regulated the minutiae of gaming rules and alcohol service and expressly permitted the serving of free drinks to patrons at the gaming tables.'" Id. 294 quoting Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227, 1317 n. 8 (3d Cir. 1994).

Moreover, the Court acknowledged, almost thirty years ago, that the precedential value of its predictive opinion was limited, as cases with similar facts worked themselves through the New Jersey court system. Hakimoglu at 293 ("[W]e understand that our decision here is unlikely to have -- and should not have -- lasting precedential significance. We expect that claims such as those advanced by the plaintiff in this case will work their way up through the New Jersey court system and that the New Jersey appellate courts will provide a definitive answer to the question before us.")

---

[1] Four years later in 1999, Rule 2:12A-1 was adopted: "The Supreme Court may answer a question of law certified to it by the United States Court of Appeals for the Third Circuit, if the answer may be determinative of an issue in litigation pending in the Third Circuit and there is no controlling appellate decision, constitutional provision, or statute in this State.

Indeed the New Jersey appellate courts have since provided guidance on the question at issue in <u>Hakimoglu</u> in the cases of <u>Bandler</u> and <u>Smerling</u> answering, as set forth in the preceding section of this brief, that a cause of action, both under the CFA and common law, against a casino is not preempted absent actual conflict with the CCA. The Appellees' motion to dismiss in the instant matter should have been denied based on the principles and law set forth in these cases.

<u>Taveras</u>

It was further error for the District Court to rely on <u>Taveras v. Resorts Int'l Hotel, Inc.</u>, 2008 U.S. Dist. LEXIS 71670 (D.N.J. Sept. 19, 2008) for dismissal of the Appellant's common law claim. In addition to its dubious precedential value, the District Court's holding in <u>Taveras</u> is based on facts, law, and medical science wholly removed from those present in the instant matter.

In <u>Taveras</u>, the District Court framed the question before it as whether the casino had an affirmative duty to identify and exclude gamblers from its brick-and-mortar casinos who exhibited compulsive tendencies. <u>Taveras</u> at *14-15. The question addressed a passive casino which "continued to allow[2] (plaintiff) to gamble in spite of clear indications that she was a compulsive gambler…" <u>Id</u>. at *5. The Court expressed its finding, again in terms of a passive brick-and-mortar

---

[2] Though the opinion makes reference to conventional casino enticements, these enticements formed no part of the Court's analysis.

casino, that "the great weight of authority supports Appellees' position that common-law tort principles do not require casinos to rescue compulsive gamblers from themselves."

The Court's concern about requiring a casino to identify a compulsive gambler was eliminated by the enactment of N.J.A.C. 13:69O-1.2(x) in 2014, requiring casinos to implement training for employees who have direct contact with patrons via phone, email, electronic chat, or other means on the recognition of the nature and symptoms of problem gambling behavior and how to assist players in obtaining information regarding help for a gambling problem. The enactment of N.J.A.C. 13:69O-1.2(x) also eliminates the concern expressed in Taveras about the lack of foreseeability of the dangers of compulsive gambling, as casinos are certainly, at least as of 2014, on notice of its potential perils.

The Appellant in the instant matter does not complain that the Appellees had an obligation to rescue him from himself, nor that the casinos are liable because they passively allowed him to gamble. The Appellant in the instant matter alleges a constant months-long stream of aggressive, affirmative acts initiated by the Appellees to entice him to gamble when they knew he was a compulsive gambler - - none of which was present in Taveras.

The Appellant's allegations in this case all involved real-time digital communication and an instantly available digital gambling platform on his

smartphone which was not merely absent in Taveras, but unimaginable when the case was decided in 2008.

Moreover, the psychiatric understanding of compulsive gambling, cited derisively by the Court in Taveras, has evolved dramatically in the sixteen years since that case was decided. Though inaccurate even back then, the Court's comparison of a problem gambler and casino to "a duty on shopping malls and credit-card companies to identify and exclude compulsive shoppers" was not wildly inconsistent with the understanding and characterization of problem gambling when Taveras was decided in 2008.

In 2008, *Pathological Gambling*, as it was then known, was categorized by the American Psychiatric Association's Diagnostic and Statistical Manual 4 ("DSM 4") as a "Disorder of Impulse Control." *See* DSM 4 at Pg. 18. Though this category of disorder did not include over-shopping as Taveras implied it did, it grouped pathological gambling together with conditions typically perceived less seriously and without sympathy such as kleptomania and pyromania. *See* DSM 4 at Pg. 18.

This classification changed five years after Taveras in the American Psychiatric Association's Diagnostic and Statistical Manual 5 ("DSM 5"), published in 2013. *See* DSM 5 at Pg. 481; 585, et seq. DSM 5 renamed Pathological Gambling as *Gambling Disorder*, and reclassified it under the

category of "Substance-Related and Addictive Disorders." Ibid. Now under the heading of Substance-Related and Addictive Disorders, Gambling Disorder has since 2013 been in the same category as: a) alcohol disorders, b) opioid disorders, c) hallucinogen disorders, d) sedative disorders, e) stimulant disorders, and f) tobacco disorders. Ibid.

> Moving gambling disorder to the addictive disorders category was implemented based upon findings that the disorder is very similar to substance use disorders in terms of etiology, symptoms, course, correlates, and treatment approaches…[f]indings from neuroscience on brain functioning, activation, and differences in comparison with healthy controls are strikingly similar between substance use disorders and gambling disorder…[t]he move of gambling disorder to the addictive disorders category recognizes that gambling disorder and substance use disorders are frequently comorbid and share many of the same underlying etiological and sustaining factors…
>
> Clinical and Research Implications of Gambling Disorder in DSM-5, Jeremiah Weinstock and Carla J. Rash, Current Addiction Reports (Jun. 13, 2014).

Moreover, the Court's concern in Taveras that a finding of liability "would in effect have no limits" is eliminated. A finding of liability in the instant matter certainly does not open limitless liability. It would merely follow the same standard for tort duty applied to any other New Jersey business under its negligence laws. *See* Hakimoglu at 296 (Becker, J. dissenting)("the New Jersey Supreme Court set out its standard for determining when a tort duty, and thus a cause of action in negligence, exists. The inquiry, 'ultimately a question of

fairness,' requires the court to weigh (1) the relationship of the parties; (2) the nature of the risk; (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution. These factors support a cause of action in this case.") *quoting* <u>Hopkins v. Fox & Lazo Realtors</u>, 132 N.J. 426 (1993).

Without actual conflict with a CCA regulation, there is no reason the Appellant's common law negligence claim should not be permitted to proceed under the ordinary standards of tort law. The District Court erred in holding that explicit authorization from the CCC or the appellate courts of New Jersey is required, and erred in its application of <u>Hakimoglu</u> and <u>Taveras</u> to support such a heightened standard.

## <u>CONCLUSION</u>

For the foregoing reasons, Appellant Sam A. Antar respectfully requests that the District Court's Letter Order dismissing his claims under the New Jersey Consumer Fraud Act and common law be reversed.

**LITT LAW, LLC**

By: MATTHEW R. LITT, ESQUIRE
*Attorney for Appellant Sam A. Antar*

Dated: June 11, 2024

## COMBINED CERTIFICATIONS

Statement of Bar Membership

I, Matthew R. Litt, am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

_____

MATTHEW R. LITT

Statement of Compliance with FRAP 32(a)(7)(b)

This brief was prepared on a computer using Microsoft Word. The font is Times New Roman, 14-point, double spaced. The word count of the body of the brief, including footnotes and headings, as calculated by Microsoft Word, is 7,569 words.

_____

MATTHEW R. LITT

Statement of Service and ECF Filing

I certify that the foregoing was filed electronically and served on all other parties via the court's ECF system. I further certify that seven hardcopy briefs will be properly delivered to the Clerk's office within five days of filing.

_____

MATTHEW R. LITT

### Statement of Identical Compliance Briefs

I hereby certify that the briefs are and will be served in compliance with the Court's rules, identical to one another and identical to the filed electronic PDF version.

_____

MATTHEW R. LITT

### STATEMENT OF VIRUS CHECK

I hereby certify that a virus check was performed on this brief and that it is free from viruses. The check was performed with Microsoft Defender, version 102.2403.21001.0

_____

MATTHEW R. LITT

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## Case No. 24-1364

SAM A. ANTAR

*Plaintiff / Appellant*

**v.**

THE BORGATA HOTEL CASINO AND SPA, LLC; B ONLINE CASINO;
BETMGM, LLC; MGM RESORTS INTERNATIONAL, INC.; ENTAIN PLC;
JOHN DOES 1-10; MARY DOES 1-10; and XYZ CORPORATIONS 1-10

*Defendants / Appellees*

APPEAL FROM THE ORDER DATED JANUARY 31, 2024 OF THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY AT
DOCKET NO. 22-05785 DISMISSING PLAINTIFF'S CLAIMS IN THEIR
ENTIRETY FOR FAILURE TO STATE A CLAIM

## APPENDIX
## VOLUME 1

Matthew R. Litt
NJ Bar 007452003
Litt Law, LLC
789 Farnsworth Avenue
Bordentown, New Jersey 08505
(908) 902-7071
MLitt@LittLaw.net

**TABLE OF CONTENTS**
**<u>VOLUME 1</u>**

District Court Docket Sheet…………………………………….. Pg. 1

District Court Letter Order………………………………………… Pg. 9

Notice of Appeal…………………………………………………… Pg. 17

APPEAL,CLOSED

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:22-cv-05785-MCA-LDW

ANTAR v. BETMGM, LLC et al
Assigned to: Judge Madeline Cox Arleo
Referred to: Magistrate Judge Leda D. Wettre
Case in other court: Third Circuit, 24-01364
                        Superior Court of New Jersey, Middlesex
                        County, MID-L-004856-22
Cause: 28:1441 Notice of Removal- Fraud

Date Filed: 09/29/2022
Date Terminated: 01/31/2024
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**SAM A. ANTAR**
         represented by  **CHRISTOPHER JOHN GRAMICCIONI**
Kingston Coventry LLC
1 Gatehall Drive
Suite 305
Parsippany, NJ 07054
908-216-0582
Email: chris@kingstoncoventry.com
*TERMINATED: 11/16/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARGO ROBERTA ZEMEL**
MARGO R ZEMEL, P.C.
50 PARK PLACE
SUITE 1542
NEWARK, NJ 07102
973-242-1818
Fax: 973-242-1817
Email: mrzesq@yahoo.com
*TERMINATED: 04/14/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW ROYE LITT**
LIFT LAW, PC
789 FARNSWORTH AVENUE
BORDENTOWN, NJ 08505
908-902-7071
Email: MLitt@LittLaw.Net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BETMGM, LLC**

represented by **GREGORY A. BAILEY**
Blank Rome LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103-6998
215-569-5512
Fax: 215-689-1991
Email: gregory.bailey@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**LAUREN ELIZABETH O'DONNELL**
BLANK ROME LLP
300 CARNEGIE CENTER
SUITE 220
PRINCETON, NJ 08540
609-750-7700
Email: odonnell@blankrome.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**THE BORGATA HOTEL CASINO AND SPA**

represented by **MARSHALL R. KING**
GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NY 10166
(212) 351-4000
Email: mking@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**B ONLINE CASINO**

**Defendant**

**MGM RESORTS INTERNATIONAL, INC.**

represented by **MARSHALL R. KING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ENTAIN PLC**

**Defendant**

**JOHN DOES 1-10**

**Defendant**

**MARY DOES 1-10**

**Defendant**

**XYZ CORPS 1-10**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/29/2022 | 1 | NOTICE OF REMOVAL by BETMGM, LLC from SUPERIOR COURT OF NEW JERSEY, MIDDLESEX COUNTY, case number MID-L-004856-22. ( Filing and Admin fee $ 402 receipt number ANJDC-13724636), filed by BETMGM, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(O'DONNELL, LAUREN) (Entered: 09/29/2022) |
| 09/29/2022 | 2 | Corporate Disclosure Statement by BETMGM, LLC identifying MGM RESORTS INTERNATIONAL and ENTAIN plc as Corporate Parent.. (O'DONNELL, LAUREN) (Entered: 09/29/2022) |
| 09/30/2022 | 3 | Third Party Litigation Funding disclosure statement pursuant to L.Civ.R 7.1.1(a)(1-3) filed by BETMGM, LLC. (O'DONNELL, LAUREN) (Entered: 09/30/2022) |
| 10/01/2022 | | Judge Madeline Cox Arleo and Magistrate Judge Leda D. Wettre added. (ps) (Entered: 10/01/2022) |
| 10/14/2022 | 4 | APPLICATION/PETITION for Pro Hac Vice Admission of Daniel E. Rhynhart, Esquire, with Consent for by BETMGM, LLC. (Attachments: # 1 Declaration of Lauren E. O'Donnell, Esquire, # 2 Declaration of Daniel E. Rhynhart, Esquire, # 3 Text of Proposed Order)(O'DONNELL, LAUREN) (Entered: 10/14/2022) |
| 10/17/2022 | 5 | ORDER GRANTING PRO HAC VICE ADMISSION OF COUNSEL Daniel E. Rhynhart, Esq.. Signed by Magistrate Judge Leda D. Wettre on 10/17/2022. (ld, ) (Entered: 10/17/2022) |
| 10/18/2022 | 6 | Notice of Request by Pro Hac Vice Daniel E. Rhynhart to receive Notices of Electronic Filings. ( Pro Hac Vice fee $ 150 receipt number ANJDC-13764668.) (O'DONNELL, LAUREN) (Entered: 10/18/2022) |
| 10/18/2022 | 7 | Corporate Disclosure Statement by BETMGM, LLC identifying Entain PLC as Corporate Parent.. (O'DONNELL, LAUREN) (Entered: 10/18/2022) |
| 10/19/2022 | | Pro Hac Vice counsel, DANIEL E. RHYNHART, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (lag, ) (Entered: 10/19/2022) |
| 10/25/2022 | 8 | NOTICE of Appearance by MARSHALL R. KING on behalf of MGM RESORTS INTERNATIONAL, INC., THE BORGATA HOTEL CASINO AND SPA (KING, MARSHALL) (Entered: 10/25/2022) |
| 10/25/2022 | 9 | Corporate Disclosure Statement by MGM RESORTS INTERNATIONAL, INC. identifying no parent corporation, nor is there any publicly held corporation that owns 10% or more of this party's stock as Corporate Parent.. (KING, MARSHALL) (Entered: 10/25/2022) |
| 10/25/2022 | 10 | Application and Proposed Order for Clerk's Order to extend time to answer as to Defendants, The Borgata Hotel Casino and Spa, and MGM Resorts International, Inc... (KING, MARSHALL) (Entered: 10/25/2022) |
| 10/26/2022 | | Clerk`s Text Order - The document 10 Application for Clerk's Order to Ext Answer/Proposed Order submitted by THE BORGATA HOTEL CASINO AND SPA, MGM RESORTS INTERNATIONAL, INC. has been GRANTED. The answer due date has been set for 11/10/2022. (lag, ) (Entered: 10/26/2022) |
| 10/27/2022 | 11 | Letter from Defendant, BetMGM. (O'DONNELL, LAUREN) (Entered: 10/27/2022) |

| | | |
|---|---|---|
| 10/27/2022 | 12 | NOTICE of Appearance by GREGORY A. BAILEY on behalf of BETMGM, LLC (BAILEY, GREGORY) (Entered: 10/27/2022) |
| 10/28/2022 | 13 | Letter from Marshall R. King to the Hon. Leda Dunn Wettre re: Defendants MGM Resorts International, Inc. and The Borgata Hotel Casino and Spa, LLC's request for an extension of time to respond to the Complaint. (KING, MARSHALL) (Entered: 10/28/2022) |
| 10/28/2022 | 14 | Letter from Marshall R. King to the Hon. Leda Dunn Wettre re: request to admit Matthew D. McGill pro hac vice. (Attachments: # 1 Declaration of Marshall R. King, # 2 Declaration of Matthew D. McGill, # 3 Text of Proposed Order)(KING, MARSHALL) (Entered: 10/28/2022) |
| 10/28/2022 | 15 | Letter from Marshall R. King to the Hon. Leda Dunn Wettre re: request to admit Joshua M. Wesneski pro hac vice. (Attachments: # 1 Declaration of Marshall R. King, # 2 Declaration of Joshua M. Wesneski, # 3 Text of Proposed Order)(KING, MARSHALL) (Entered: 10/28/2022) |
| 10/28/2022 | 16 | LETTER ORDER granting request for an additionally 60 days through 12/6/2022 to respond. Signed by Magistrate Judge Leda D. Wettre on 10/28/2022. (lag, ) (Entered: 10/28/2022) |
| 10/31/2022 | 17 | ORDER admitting Mattew McGill and Joshua Wesneski pro hac vice. Signed by Magistrate Judge Leda D. Wettre on 10/31/2022. (lag, ) (Entered: 10/31/2022) |
| 11/10/2022 | 18 | LETTER ORDER extending the time in which defendants may respond through 12/6/2022. Signed by Magistrate Judge Leda D. Wettre on 11/10/2022. (lag, ) (Entered: 11/10/2022) |
| 11/14/2022 | 19 | Notice to be terminated and withdraw from Notices of Electronic filing as to case. (GRAMICCIONI, CHRISTOPHER) (Entered: 11/14/2022) |
| 11/15/2022 | | Pro Hac Vice fee received as to Matthew D. McGill and Joshua M. Wesneski $ 300, receipt number TRE129644 (jal, ) (Entered: 11/15/2022) |
| 11/16/2022 | 20 | LETTER ORDER regarding withdrawal as counsel as to CHRISTOPHER J. GRAMICCIONI. Signed by Magistrate Judge Leda D. Wettre on 11/16/2022. (lag, ) (Entered: 11/16/2022) |
| 11/16/2022 | 21 | Notice of Request by Pro Hac Vice Matthew D. McGill to receive Notices of Electronic Filings. (KING, MARSHALL) (Entered: 11/16/2022) |
| 11/16/2022 | 22 | Notice of Request by Pro Hac Vice Joshua M. Wesneski to receive Notices of Electronic Filings. (KING, MARSHALL) (Entered: 11/16/2022) |
| 11/17/2022 | | Pro Hac Vice counsel, MATTHEW D. MCGILL and JOSHUA WESNESKI, has been added to receive Notices of Electronic Filing. Pursuant to L.Civ.R. 101.1, only local counsel are entitled to sign and file papers, enter appearances and receive payments on judgments, decrees or orders. (lag, ) (Entered: 11/17/2022) |
| 12/06/2022 | 23 | MOTION to Dismiss by BETMGM, LLC. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit)(BAILEY, GREGORY) (Entered: 12/06/2022) |
| 12/06/2022 | 24 | MOTION to Compel *Arbitration or to Dismiss Under Rules 12(B)(2) and 12(B)(6)* by MGM RESORTS INTERNATIONAL, INC., THE BORGATA HOTEL CASINO AND SPA. (Attachments: # 1 Memorandum of Law in Support, # 2 Affirmation of Marshall R. King in Support, # 3 Exhibit A to Affirmation of M. King - Complaint, # 4 Affirmation of Noelle McManus, # 5 Exhibit A to Affirmation of N. McManus - 10K, # 6 Text of Proposed Order, # 7 Certificate of Service)(KING, MARSHALL) (Entered: 12/06/2022) |

| 12/07/2022 | | Set Deadlines as to 24 MOTION to Compel Arbitration or to Dismiss Under Rules 12(B)(2) and 12(B)(6), 23 MOTION to Dismiss. Motions set for 1/3/2023 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, these motions will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (wh) (Entered: 12/07/2022) |
|---|---|---|
| 12/27/2022 | 25 | Letter from Margo R Zemel. (ZEMEL, MARGO)<br><br>NOTICE TO COUNSEL: Counsel is advised that pursuant to Local Civil Rule 5.3(c)(2), a single, consolidated motion to seal shall be filed within 14 days following the completed briefing of the materials sought to be sealed, or within 14 days following the date on which the last of such materials was filed under temporary seal if the motion is resolved, unless otherwise directed by the Court. (Entered: 12/27/2022) |
| 12/27/2022 | 26 | Letter from Margo R Zemel. (ZEMEL, MARGO) (Entered: 12/27/2022) |
| 12/28/2022 | 27 | TEXT ORDER: A telephone conference is set for January 9, 2023 at 12:00 p.m. before Magistrate Judge Leda D. Wettre. Dial-in information for the conference is (888) 684-8852, access code 8948139. So Ordered by Magistrate Judge Leda D. Wettre on 12/28/22. (LM, ) (Entered: 12/28/2022) |
| 01/09/2023 | | Minute Entry for proceedings held before Magistrate Judge Leda D. Wettre: Status Conference held on 1/9/2023. (LM, ) (Entered: 01/09/2023) |
| 01/09/2023 | 28 | TEXT ORDER: A telephone conference is set for January 30, 2023 at 11:30 a.m. before Magistrate Judge Leda D. Wettre. Dial-in information for the conference is (888) 684-8852, access code 8948139. So Ordered by Magistrate Judge Leda D. Wettre on 1/9/23. (LM, ) (Entered: 01/09/2023) |
| 01/20/2023 | 29 | Letter from Marshall R. King to the Hon. Leda Dunn Wettre requesting leave to withdraw pro hac vice attorney (Joshua Wesneski). (KING, MARSHALL) (Entered: 01/20/2023) |
| 01/20/2023 | 30 | Letter from Marshall R. King to the Hon. Leda Dunn Wettre requesting leave to be excused from January 30, 2023 conference and for permission of pro hac vice attorney (Matthew D. McGill) to appear at conference. (KING, MARSHALL) (Entered: 01/20/2023) |
| 01/20/2023 | 31 | LETTER ORDER approving withdrawal of JOSHUA WESNESKI as Pro Hac Vice counsel. Signed by Magistrate Judge Leda D. Wettre on 1/20/2023. (lag, ) (Entered: 01/23/2023) |
| 01/23/2023 | 32 | LETTER ORDER granting request to be excused from 1/30/2023 telephonic conference. Signed by Magistrate Judge Leda D. Wettre on 1/23/2023. (lag, ) (Entered: 01/23/2023) |
| 01/30/2023 | | Minute Entry for proceedings held before Magistrate Judge Leda D. Wettre: Status Conference held on 1/30/2023. (LM, ) (Entered: 01/30/2023) |
| 02/10/2023 | 33 | Letter from Margo R. Zemel. (ZEMEL, MARGO) (Entered: 02/10/2023) |
| 02/15/2023 | 34 | NOTICE by BETMGM, LLC *Response to Plaintiff's 2-10-23 Letter* (O'DONNELL, LAUREN) (Entered: 02/15/2023) |
| 02/16/2023 | 35 | Letter from Marshall R. King to the Honorable Leda Dunn Wettre re: Plaintiff's request for an Administrative Termination Order. re 33 Letter. (KING, MARSHALL) (Entered: 02/16/2023) |
| 02/18/2023 | 36 | TEXT ORDER Plaintiff, due to his incarceration, having requested an extension of time to respond to defendants' motions to dismiss and compel arbitration (ECF 26); and plaintiff subsequently having indicated his willingness for this action to be terminated administratively until he was in a better position to respond to the motions (ECF 33); and |

| | | |
|---|---|---|
| | | defendants being amenable to an extension of time but not an administrative termination order, pointing out that their motions raise legal issues that may be addressed by plaintiff's counsel without requiring the incarcerated plaintiff's factual input and that an indefinite delay in the resolution of their motions would prejudice them (ECF 34, 35); and the Court finding defendants' arguments persuasive; it is hereby ORDERED that plaintiff may have until March 30, 2023 to file his response to the pending motions; and it is further ORDERED that defendants may have until April 20, 2023 to file their reply papers. So Ordered by Magistrate Judge Leda D. Wettre on 2/18/23. (Wettre, Leda) (Entered: 02/18/2023) |
| 03/14/2023 | 37 | Letter from Margo R. Zemel. (ZEMEL, MARGO) (Entered: 03/14/2023) |
| 03/16/2023 | 38 | TEXT ORDER: The Court having reviewed the letter at ECF No. 37, plaintiff's counsel is directed to file a Motion to Withdraw as Counsel, on notice to her client and all counsel. So Ordered by Magistrate Judge Leda D. Wettre on 3/16/23. (LM, ) (Entered: 03/16/2023) |
| 03/23/2023 | 39 | First MOTION to Withdraw as Attorney by All Plaintiffs. (Attachments: # 1 Declaration, # 2 order, # 3 memorandum)(ZEMEL, MARGO) (Entered: 03/23/2023) |
| 03/28/2023 | | Set Deadlines as to 39 First MOTION to Withdraw as Attorney . Motion set for 4/17/2023 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 03/28/2023) |
| 04/03/2023 | 40 | RESPONSE to Motion filed by MGM RESORTS INTERNATIONAL, INC., THE BORGATA HOTEL CASINO AND SPA re 39 First MOTION to Withdraw as Attorney / *DEFENDANTS BETMGM, LLC, MGM RESORTS INTERNATIONAL, INC., AND MARINA DISTRICT DEVELOPMENT COMPANY, LLC'S JOINT RESPONSE TO MARGO ZEMEL'S MOTION TO WITHDRAW* (Attachments: # 1 Certificate of Service)(KING, MARSHALL) (Entered: 04/03/2023) |
| 04/14/2023 | 41 | ORDER granting 39 Motion to Withdraw as Attorney as to MARGO ROBERTA ZEMEL. Signed by Magistrate Judge Leda D. Wettre on 4/14/2023. (lag, ) (Entered: 04/14/2023) |
| 04/16/2023 | 42 | NOTICE of Appearance by MATTHEW ROYE LITT on behalf of SAM A. ANTAR (LITT, MATTHEW) (Entered: 04/16/2023) |
| 04/16/2023 | 43 | Letter re 42 Notice of Appearance. (LITT, MATTHEW) (Entered: 04/16/2023) |
| 04/21/2023 | 44 | Letter from BetMGM, LLC re 43 Letter. (O'DONNELL, LAUREN) (Entered: 04/21/2023) |
| 04/25/2023 | 45 | Letter from Matthew Litt requesting telephone conference re 44 Letter. (LITT, MATTHEW) (Entered: 04/25/2023) |
| 04/26/2023 | 46 | TEXT ORDER The Court having held a telephonic status conference to discuss the issues raised in the parties recent letters (ECF 43, 44, 45), and it having been agreed that plaintiff may file an Amended Complaint without prejudice to defendants renewing their motion to compel arbitration against the Amended Complaint, Plaintiff shall file its Amended Complaint on or before May 1, 2023. Given that the motions at ECF 23 and 24 will be rendered moot to the extent they are addressed to the current Complaint, those motion are hereby terminated without prejudice.. So Ordered by Magistrate Judge Leda D. Wettre on 4/26/23. (Wettre, Leda) (Entered: 04/26/2023) |
| 04/26/2023 | | Minute Entry for proceedings held before Magistrate Judge Leda D. Wettre: Status Conference held on 4/26/2023. (LM, ) (Entered: 04/26/2023) |
| 05/01/2023 | 47 | AMENDED COMPLAINT against B ONLINE CASINO, BETMGM, LLC, ENTAIN PLC, JOHN DOES 1-10, MARY DOES 1-10, MGM RESORTS INTERNATIONAL, |

| | | INC., THE BORGATA HOTEL CASINO AND SPA, XYZ CORPS 1-10, filed by SAM A. ANTAR.(LITT, MATTHEW) (Entered: 05/01/2023) |
|---|---|---|
| 05/12/2023 | [48](#) | Letter from BetMGM, LLC. (BAILEY, GREGORY) (Entered: 05/12/2023) |
| 05/17/2023 | [49](#) | ORDER that defendants may file their motions to compel arbitration and motions to dismiss through 6/9/2023. Any opposition to the motions shall be filed by 6/30/2023, and replies, if any, are due by 7/14/2023. Signed by Magistrate Judge Leda D. Wettre on 5/17/2023. (lag, ) Modified on 5/31/2023 (jmh). (Entered: 05/17/2023) |
| 06/09/2023 | [50](#) | MOTION to Dismiss by BETMGM, LLC. (Attachments: # [1](#) Exhibit)(O'DONNELL, LAUREN) (Entered: 06/09/2023) |
| 06/09/2023 | [51](#) | MOTION to Compel */ Motion to Compel Arbitration or to Dismiss Under Rules 12(b)(2) and 12(b)(6)*, MOTION to Dismiss ( Responses due by 6/30/2023.) by MGM RESORTS INTERNATIONAL, INC., THE BORGATA HOTEL CASINO AND SPA. (Attachments: # [1](#) Brief - Memorandum of Law in Support, # [2](#) Declaration - Affirmation of Marshall R. King in Support, # [3](#) Exhibit A to King Affirmation - Amended Complaint, # [4](#) Declaration - Affirmation of Noelle McManus, # [5](#) Exhibit A to McManus Affirmation - Form 10K, # [6](#) Text of Proposed Order, # [7](#) Certificate of Service)(KING, MARSHALL) (Entered: 06/09/2023) |
| 06/12/2023 | | Set Deadlines as to [51](#) MOTION to Compel */ Motion to Compel Arbitration or to Dismiss Under Rules 12(b)(2) and 12(b)(6)* MOTION to Dismiss , [50](#) MOTION to Dismiss . Motion set for 7/3/2023 before Judge Madeline Cox Arleo. Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required. Note that this is an automatically generated message from the Clerk`s Office and does not supersede any previous or subsequent orders from the Court. (lag, ) (Entered: 06/12/2023) |
| 06/30/2023 | [52](#) | MEMORANDUM in Opposition filed by SAM A. ANTAR re [51](#) MOTION to Compel */ Motion to Compel Arbitration or to Dismiss Under Rules 12(b)(2) and 12(b)(6)* MOTION to Dismiss , [50](#) MOTION to Dismiss (LITT, MATTHEW) (Entered: 06/30/2023) |
| 07/14/2023 | [53](#) | REPLY to Response to Motion filed by MGM RESORTS INTERNATIONAL, INC., THE BORGATA HOTEL CASINO AND SPA re [51](#) MOTION to Compel */ Motion to Compel Arbitration or to Dismiss Under Rules 12(b)(2) and 12(b)(6)* MOTION to Dismiss (Attachments: # [1](#) Certificate of Service)(KING, MARSHALL) (Entered: 07/14/2023) |
| 07/14/2023 | [54](#) | BRIEF in Support filed by BETMGM, LLC re [50](#) MOTION to Dismiss *Reply in Support of Motion to Compel Arbitration or Alternatively to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.R.Civ.P. 12(B)(6)* (O'DONNELL, LAUREN) (Entered: 07/14/2023) |
| 07/25/2023 | [55](#) | Letter from Plaintiff regarding request for oral argument re [51](#) MOTION to Compel */ Motion to Compel Arbitration or to Dismiss Under Rules 12(b)(2) and 12(b)(6)* MOTION to Dismiss , [50](#) MOTION to Dismiss . (LITT, MATTHEW) (Entered: 07/25/2023) |
| 12/07/2023 | [56](#) | LETTER ORDER directing plaintiff to show cause why this action should not be dismissed for lack of subject matter jurisdiction; that plaintiff shall filing briefing by 12/14/2023; Show Cause Response due by 12/21/2023.. Signed by Judge Madeline Cox Arleo on 12/7/2023. (lag, ) (Entered: 12/07/2023) |
| 12/14/2023 | [57](#) | AFFIDAVIT re [56](#) Order to Show Cause, by SAM A. ANTAR. (Attachments: # [1](#) Affidavit Affidavit of Sam A. Antar)(LITT, MATTHEW) (Entered: 12/14/2023) |
| 12/21/2023 | [58](#) | RESPONSE TO ORDER TO SHOW CAUSE by BETMGM, LLC. (O'DONNELL, LAUREN) (Entered: 12/21/2023) |
| 01/31/2024 | [59](#) | LETTER ORDER granting [50](#) Motion to Dismiss; granting [51](#) Motion to Compel; granting [51](#) Motion to Dismiss ***CIVIL CASE TERMINATED. Signed by Judge Madeline Cox |

| | | |
|---|---|---|
| | | Arleo on 1/31/2024. (lag, ) (Entered: 01/31/2024) |
| 02/26/2024 | 60 | NOTICE OF APPEAL as to 59 Order on Motion to Dismiss, Order on Motion to Compel, by SAM A. ANTAR. Filing fee $ 605, receipt number BNJDC-15119672. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (LITT, MATTHEW) (Entered: 02/26/2024) |
| 02/27/2024 | 61 | USCA Case Number 24-1364 for 60 Notice of Appeal (USCA), filed by SAM A. ANTAR. USCA Case Manager Alicia (Document Restricted - Court Only) (ca3amr) (Entered: 02/27/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/11/2024 07:45:11 | | | |
| **PACER Login:** | Mattlitty15 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-05785-MCA-LDW Start date: 1/1/1980 End date: 6/11/2024 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

January 31, 2024

<u>VIA ECF</u>

**<u>LETTER ORDER</u>**

Re:    **Sam A. Antar v. The Borgata Hotel Casino and Spa, LLC; B Online Casino; BetMGM, LLC; MGM Resorts International, Inc.; Entain Plc; John Does 1–10; Mary Does 1–10; And XYZ Corporations 1–10**
<u>Civil Action No. 22-05785</u>

Dear Litigants:

Before the Court are (1) Defendant BetMGM LLC's ("BetMGM") Motion to Compel Arbitration, or Alternatively, to Dismiss the Complaint (the "BetMGM Motion"), ECF No. 50, and (2) Defendants MGM Resorts International, Inc. ("MGM") and Marina District Development Company, LLC d/b/a The Borgata Hotel Casino and Spa's ("Borgata" and together with BetMGM, MGM, and the nonmoving Defendants,[1] the "Defendants") Motion to Compel Arbitration or Dismiss the Complaint (the "Borgata Motion" and together with the BetMGM Motion, the "Motions"), ECF No. 51. Plaintiff Sam Antar ("Plaintiff") opposes the Motions. ECF No. 52. For the reasons explained below, the Motions are **GRANTED**.

**I.    BACKGROUND[2]**

Plaintiff alleges that Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (the "CFA") and are liable for negligence because they persistently enticed Plaintiff

---

[1] According to Defendants, B Online Casino is not a legal entity. <u>See</u> Notice of Removal, ECF No. 1 ¶15. Furthermore, Defendant Entain Plc has not filed any motion nor explicitly joined either of the Motions, and none of the parties make reference in their filings to the applicability of the Motions to Entain Plc. Nevertheless, for the reasons discussed herein, this Order applies in equal force to all Defendants.

[2] For purposes of a motion to dismiss, the Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. <u>N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.</u>, 760 F.3d 297, 302 (3d Cir. 2014)

1

to gamble despite knowing that Plaintiff was a compulsive gambler. <u>See</u> Am. Compl., ECF No. 47 ¶¶ 228–43.

Defendants are entities and individuals that own or operate casinos or online gambling platforms. <u>Id.</u> ¶¶ 14–20. Plaintiff is an individual with an alleged gambling addiction disorder who engaged in gambling activity in New Jersey through casinos and online gambling platforms owned or operated by Defendants. <u>Id.</u> ¶¶ 11–13.

Soon after Plaintiff began gambling, he became a VIP rewards member and was assigned a designated VIP Account Manager employed by Borgata and BetMGM. <u>Id.</u> ¶¶ 21–28. A VIP Account Manager is an individual who is responsible for retaining gambling customers and maximizing the profitability of the casinos and online gambling platforms. <u>Id.</u> ¶ 21. Over a seven-month period, Plaintiff's VIP Account Manager communicated directly with Plaintiff via telephone, e-mail, and text message offering numerous gambling promotions, incentives, and bonuses meant to encourage further gambling by Plaintiff. <u>Id.</u> ¶¶ 93–227. During this period, Plaintiff placed over 100,000 online bets and gambled in excess of $24 million. <u>Id.</u> ¶ 29.

According to Plaintiff, the VIP Account Manager (1) was trained to recognize signs of compulsive gambling; (2) knew or should have known that Plaintiff was a compulsive gambler given, among other things, the frequency and volume of his gambling activity; and (3) nevertheless continued to entice Plaintiff with promotions and incentives, <u>id.</u> ¶¶ 30–92, thus constituting an unconscionable commercial practice in violation of the CFA and a breach of Defendants' duty of care imposed by the Casino Control Act, N.J.S.A. 5:12-1 to -233 (the "CCA"), <u>id.</u> ¶¶ 228–43.

On September 28, 2022, Plaintiff initiated this action in New Jersey state court, and Defendants soon thereafter removed to this Court. <u>See generally</u> Notice of Removal. On May 1, 2023, Plaintiff filed the Amended Complaint with three causes of action: (1) violations of the CFA ("Count I"); (2) negligence ("Count II"); and (3) unjust enrichment ("Count III").[3] Now, Defendants seek an order to compel arbitration or, in the alternative, to dismiss the action.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim to relief. Fed. R. Civ. P. 12(b)(6). While the complaint need not contain detailed factual allegations, Fed. R. Civ. P. 8(a), it must contain "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). The complaint is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Thus, "conclusory or bare-bones allegations will no longer survive a motion to dismiss." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

---

[3] Plaintiff has since conceded dismissal of Count III. Pl.'s Opp'n, ECF No. 52 at 40. Therefore, the Court only focuses on Plaintiff's CFA and negligence claims.

III.   ANALYSIS

Defendants argue that this matter should be sent to arbitration or, in the alternative, should be dismissed in its entirety.  See generally Mots.  The Court, however, will not address most of Defendants' arguments because, as Defendants correctly point out, Plaintiff's CFA claim is preempted by the CCA and Plaintiff fails to state a negligence claim upon which relief can be granted.

A.  The CFA Claim

Defendants argue that Plaintiff's CFA claim is based on conduct regulated by CCA regulations—specifically N.J.A.C. 13:69O-1.2(x)—and, therefore, must be dismissed because the two regulatory schemes conflict and "the CFA does not apply when 'a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes.'"  ECF No. 51.1 at 31 (quoting Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 270 (N.J. 1997)).  Plaintiff counters that the "CFA applies to covered practices [under the CCA], even in the face of other existing sources of regulation."  Pl.'s Opp'n at 24 (quoting Bandler v. Landry's Inc., 464 N.J.Super. 311, 321 (App.Div. 2020).  Plaintiff, however, relies exclusively on Bandler, which is distinguishable.

In Bandler, the conflict between the CCA and the CFA revolved around casino advertising practices.  464 N.J.Super. at 315.  The court held that the CCA did not preempt the CFA because the advertisement in question was not "gaming-related advertising."  Id. at 324.  Rather, it was advertising simply meant to attract customers to the casino, a type of advertising for which both the CCA and CFA share a common purpose—preventing deceptive advertising.  Id.  Conversely, "gaming-related advertising"—advertising that would call for CCA preemption—deals with "highly sophisticated or technical" aspects of gambling and requires "agency expertise" for the resolution of related issues.  Id. at 323–24 (quoting Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 192–93 (Super. Ct. App. Div. 2006)); see also Doug Grant v. Greate Bay Casino Corp., 232 F.3d 173, 188–89 (3d Cir. 2000) (CCA exclusively governs advertising that references specific aspects and rules of blackjack); Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222, 1224–25 (D.C.N.J. 1994), aff'd on other grounds, 47 F.3d 88 (3d Cir. 1995) (plaintiff's suit preempted by CCA because slot machine signage referenced specific rule of the game).

Here, the CCA's regulations on compulsive gamblers involve such highly technical aspects of gambling, the resolution of which requires agency expertise.  The specific regulation here provides that

> [a]ll Internet gaming operators with employees who have direct
> contact with patrons . . . shall implement training for those
> employees . . . addressing [recognizing and responding to
> compulsive gamblers]. If the training requirement under this

3

subsection follows the standards set forth by the Council on
Compulsive Gambling of New Jersey it shall be deemed sufficient.

N.J.A.C. 13:69O-1.2(x).  Plaintiff argues that "[a]t all times relevant . . . Defendants were obligated
by [and in compliance with] N.J.A.C. 13:69O-1.2(x)," Am. Compl. ¶¶ 30–31, and that,
nonetheless, "Defendants engaged in an unconscionable commercial practice by providing
ongoing enticements to gamble between June 2019 and January 2020 while Defendants knew that
the Plaintiff was a compulsive gambler and/or that he demonstrated symptoms of being a
compulsive gambler," Id. at 234.[4]  But as this argument belies, recognizing and responding to
compulsive gambling is a highly technical aspect of gambling.  These regulations call for
specialized training for employees of internet gaming operators.  N.J.A.C. 13:69O-1.2(x).  The
training is meant to follow specific standards promulgated by the Council on Compulsive
Gambling of New Jersey.  Id.  These are issues, like those in Doug Grant and Marcangelo, that
call into question specific aspects of gambling and gambling behavior, unlike the generally
applicable advertising deception issues discussed in Bandler and Smerling.[5]

Additionally, "the [CFA] is inapplicable where 'the other source or sources of regulation
deal specifically, concretely, and pervasively with the particular activity, implying a legislative
intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes.'"
Doug Grant, 232 F.3d at 188 (quoting Lemelledo, 150 N.J. at 270).  In addition to N.J.A.C.
13:69O-1.2(x), CCA regulations deal pervasively with the responsibilities of casinos as they relate
to compulsive gambling: (1) requiring fees that go toward funding efforts to treat and educate
problem gamblers, such as those provided by the Council on Compulsive Gambling (N.J.A.C.
13:69A-9.4(c)(5)–(6)); (2) requiring licensees to file with the Division of Gaming Enforcement
internal controls that include detailed procedures on reporting problem gamblers (N.J.A.C.
13:69O-1.2(j)); (3) requiring licensees to notify problem gamblers of and direct them to resources
that address and treat problem gambling (N.J.A.C. 13:69O-1.2(z)); (4) requiring internet gaming
systems to generate, review, and document action taken on weekly reports identifying potential
problem gamblers (N.J.A.C. 13:69O-1.9); and (5) providing a comprehensive regulatory scheme
for problem gamblers to place themselves on a self-exclusion list (N.J.A.C. 13:69G-2.2).  Notably,
the CCA is silent on whether casinos or online gambling platforms may induce people who present
with compulsive gambling behavior to patronize their businesses.  This regulatory scheme would
certainly work at cross-purposes with the CFA, especially when Defendants could be, according
to Plaintiff, liable for violations of the CFA despite being "in full compliance with [the CCA]."

---

[4] Although these arguments are made with regard to the CFA claim, Plaintiff argues that this same regulation is the
basis for foreseeability in his negligence claim.  See Pl.'s Opp'n at 33–34.

[5] Plaintiff's own argument to support his negligence claim further bolsters this finding.  Plaintiff argues that
businesses should be held "responsible when they specifically target for enticement [compulsive gamblers] to
continue and increase their [gambling]."  Pl.'s Opp'n at 36.  But to determine whether it is enticing compulsive
gamblers, a casino, through its employees, must first rely on technical training to determine whether a given
customer is a compulsive gambler in the first instance.

Am. Compl. ¶ 31; see also Doug Grant, 232 F.3d at 189 ("[T]he goals of the CFA and the [CCA] are not entirely consistent. The [CFA] is concerned with the protection of consumers. The [CCA], however, has dual purposes that must be balanced—the protection of gambling patrons and the protection of the financial viability of the casino industry.").

For these reasons, Plaintiff's CFA claim is dismissed.

## A. The Negligence Claim

Although the Court finds that the CCA preempts Plaintiff's CFA claim, "courts [are] not ousted of jurisdiction over common law damage claims against casinos merely because the claims arose from gambling transactions." Doug Grant, 232 F.3d at 188. Therefore, the CCA does not preempt Plaintiff's negligence claim. That said, the Court dismisses Plaintiff's negligence claim because Plaintiff fails to show that Defendants, as a matter of law, owed a duty to Plaintiff. See GNOC Corp. v. Aboud, 715 F. Supp. 644, 652 (D.N.J. 1989) (quoting Morril v. Morril, 104 N.J.L. 557, 560–61 (1928)).

Defendants are correct that New Jersey courts have not yet recognized the existence of the type of negligence common law duty of care that Plaintiff seeks to impose on Defendants in this case. See Taveras v. Resorts Int'l Hotel, Inc., No. 07-4555, 2008 WL 4372791, at *3 (D.N.J. Sep. 19, 2008) (noting that "the New Jersey Supreme Court has not squarely addressed" whether casinos had a duty to identify and exclude compulsive gamblers); see also Annitto v. Trump Marina Hotel Casino, No. A-1244-04T1, 2005 WL 4344137, at *5 (Super. Ct. App. Div. July 25, 2006) ("There has been no New Jersey appellate decision on the existence of a common law cause of action against a casino for damages resulting from serving or extending credit to an intoxicated patron, or allowing an intoxicated patron to continue gambling.").

Given that the New Jersey Supreme Court has not yet addressed whether such a duty exists, this Court "must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 661 (3d Cir. 1980). And the Third Circuit has already held, based on its prediction of how the New Jersey Supreme Court would decide the issue, that casinos do not owe such a duty to patrons. Hakimoglu v. Trump Taj Mahal Assocs., 70 F.3d 291, 294 (3d Cir. 1995). Furthermore, in Taveras, the plaintiff alleged that casino employees "continued to allow her to gamble in spite of clear indications that she was a compulsive gambler" and even enticed her with "event promotions, gambling tournament invitations, promotions for free televisions, as well as free limousine rides, hotel rooms, food, entertainment, and gift coupons." 2008 WL 4372791, at *1–2. Nevertheless, the court, relying on Hakimoglu, found that the casino owed plaintiff no negligence common law duty of care. Id. at 16.

These cases are directly on point with this action. Plaintiff alleges that Defendants are liable for negligence because they enticed him to gamble despite knowing, or having enough

information that they should have known, that he was a compulsive gambler. Am. Compl. ¶¶ 228–43. But this is precisely the type of conduct alleged in Taveras and very similar to the type of conduct in Hakimoglu, both of which held that the New Jersey Supreme Court would not find such a duty to exist. See supra at 5. This is further bolstered by the reasoning of the Taveras court:

> The strongest argument against the existence of a casino's duty to restrain compulsive gamblers is the State's deliberate decision not to impose such a duty. "[S]tatutory and administrative controls over casino operations . . . are extraordinary[,] pervasive and intensive . . . . [State law regulates] virtually every facet of casino gambling and its potential impact upon the public. The regulatory scheme is both comprehensive and minutely elaborate." Yet, in spite of the "extraordinary[,] pervasive and intensive" regulations over "virtually every facet of casino gambling," id., the State's policymakers have notably declined to impose the duty upon which Plaintiff relies here.

Taveras, 2008 WL 4372791, at *4 (quoting Knight v. City of Margate, 86 N.J. 374, 381 (1981). As this Court noted, the CCA pervasively regulates the responsibilities of casinos as they relate to compulsive gamblers but is notably silent on whether casinos or online gambling platforms may induce people who present with compulsive gambling behavior to patronize their businesses. Supra at 4. Given this precedent and the comprehensive regulatory framework at play here, this Court joins Hakimoglu and Taveras and finds, as a matter of law, that Defendants do not owe a negligence common law duty of care to Plaintiffs according to the facts as alleged in the Amended Complaint.

Plaintiff makes three counterarguments: (1) the enactment of N.J.A.C. 13:69O-1.2(x), requiring casinos to implement training on the recognition of problem gambling behavior, eliminates the Taveras court's concern regarding a casino's ability to identify problem gamblers and the lack of foreseeability of the dangers of compulsive gambling; (2) this action involved affirmative and aggressive enticement of Plaintiff, not a simple passive allowance of a problem gambler to continue gambling; and (3) today, unlike when Hakimoglu and Taveras were decided, the psychiatric understanding of compulsive gambling has evolved, to the extent that gambling addiction is now recognized as a more severe substance addictive disorder in the American Psychiatric Association's Diagnostic and Statistical Manual 5 ("DSM 5"), rather than its former classification as a disorder of impulse control. Pl.'s Opp'n at 31–36. But these arguments are unavailing.

First, as the Court noted, although the CCA regulates the responsibilities of casinos as they relate to problem gambling behavior, the CCA is silent on any duty owed by casinos to prevent or stop inducing gambling from those that exhibit problem gambling behavior. Supra at 4–6.

Furthermore, if Plaintiff's allegation was that Defendants breached a duty imposed by N.J.A.C. 13:69O-1.2(x), such duty would be to provide adequate training for certain employees to identify problem gambling behavior—a duty that Plaintiff concedes Defendants were in full compliance with at all relevant times.  See Am. Compl. ¶ 31.

Second, the affirmative enticement in this case is no different than the affirmative enticement in Hakimoglu and Taveras.  In Hakimoglu, the plaintiff alleged that the defendants "intentionally and maliciously enticed him to gamble . . . by providing him with free alcoholic beverages and other amenities" and "that after he became visibly and obviously intoxicated the defendants invited and permitted him to continue to gamble in that condition for lengthy periods." Hakimoglu, 70 F.3d at 292 (internal quotation marks removed).  In Taveras, the plaintiff alleged that casino employees "refused to permit [her] family members from taking her home and continued to allow her to gamble in spite of clear indications that she was a compulsive gambler" and that "she received numerous enticements from Defendant-casinos, including casino event promotions, gambling tournament invitations, promotions for free televisions, as well as free limousine rides, hotel rooms, food, entertainment, and gift coupons."  Taveras, 2008 WL 4372791, at *1–2 (alteration in original) (internal citations and quotation marks removed).  Yet in both those cases, the courts held that the defendants had no common law duty to the plaintiffs.  See supra at 5.

Third, despite the inclusion of gambling addiction as a substance addiction disorder in the DSM 5, the New Jersey legislature, as the Court has already noted, has not yet seen fit to require casinos to prevent or stop inducing gambling from those that exhibit problem gambling behavior. Supra at 4–6.  Furthermore, alcohol dependence was recognized as a substance addiction disorder at the time Hakimoglu was decided, In re in re Sullivan, 904 F.2d 826, 833 n.5 (3d Cir. 1990) (noting that the DSM 3 defined alcohol dependence and alcoholism as a pathological substance addiction disorder), and the Hakimoglu court refused to extend common law dram-shop liability—i.e., liability of a liquor licensee for serving alcohol to  a visibly intoxicated patron—to casino gambling losses, Hakimoglu, 70 F.3d at 293–94 (quoting the district court's reasoning that "extending common law dram-shop liability into an area so fully regulated, without a glimmer of legislative intent, is not a predictable extension of common law tort principles, and has not been foreshadowed by the New Jersey courts").  As such, the classification of gambling addiction as a more serious substance addiction disorder alone is not enough to impose such a negligence common law duty of care on Defendants.

For these reasons, Plaintiff's negligence claim is dismissed.

**IV.    CONCLUSION**

For the reasons stated above, Defendants' Motions, ECF Nos. 50 and 51, are **GRANTED**, and Plaintiff's Complaint is **DISMISSED**.  This matter is hereby **CLOSED**.

**SO ORDERED.**

*/s Madeline Cox Arleo*_____
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

8

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Full Caption in District Court:                    Docket No.: 2:22-cv-05785(MCA)(LDW)

Sam A. Antar
        (Plaintiff)                                Judge: Hon. Madeline Cox Arleo

    v.

The Borgata Hotel Casino and Spa, LLC;
B Online Casino; BetMGM, LLC; MGM
Resorts International Inc.; Entain PLC;
John Does 1-10; Mary Does 1-10; and XYZ
Corporations 1-10,
        (Defendants)

## NOTICE OF APPEAL TO THE U.S. COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Notice is hereby given that _____ **Plaintiff Sam A. Antar** _____

appeals to the United States Court of Appeals for the Third Circuit from

[ ] Judgement, [**X**] Order, [ ] Other _____ _____
                                        (Specify)
of the United States District Court, District of New Jersey, entered in this action on

_____ January 31, 2024 _____.
(Date)

Dated: February 26, 2024

                                        Litt Law, LLC by: /s Matthew R. Litt, Esq.
                                        Appellant

                                        789 Farnsworth Ave. _____
                                        Street

                                        Bordentown, NJ 08505 _____
                                        City, State, Zip

                                        (908) 902-7071 _____
                                        Telephone

# <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 11, 2024 the foregoing was filed electronically and served on the other parties via the court's ECF system.

**LITT LAW, LLC**

_____

By: MATTHEW R. LITT, ESQUIRE
*Counsel for Plaintiff / Appellant Sam A. Antar*

Dated: June 11, 2024