**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1364
_____

SAM A. ANTAR,

Appellant

v.

BETMGM, LLC; THE BORGATA HOTEL CASINO AND SPA;
B ONLINE CASINO; MGM RESORTS INTERNATIONAL, INC.;
ENTAIN PLC; JOHN DOES 1-10; MARY DOES 1-10; XYZ CORPS 1-10

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:22-cv-05785)
District Judge:  Honorable Madeline C. Arleo

_____

Argued on December 10, 2024

Before: BIBAS, CHUNG and ROTH, <u>Circuit Judges</u>

(Filed; April 28, 2025)


Matthew R. Litt          **[Argued]**
789 Farnsworth Avenue
Bordentown, NJ 08505

*Counsel for Appellant*

Michael R. Darbee
Stephen M. Orlofsky
Blank Rome
300 Carnegie Center
Suite 220
Princeton, NJ 08540

Lauren E. O'Donnell
Daniel E. Rhynhart          **[Argued]**
Blank Rome
130 N 18th Street
One Logan Square
Philadelphia, PA 19103

      *Counsel for Appellee BETMGM LLC*

Matthew D. McGill          **[Argued]**
Gibson Dunn & Crutcher
1700 M Street, NW
Suite 900
Washington, DC 20036

      *Counsel for Appellees Borgata Hotel Casino and Spa*
      *& MGM Resorts International, LLC*

David R. Kott
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ 07102

      *Counsel for Amicus Appellees New Jersey Business & Industry*
      *Association; New Jersey Chamber of Commerce; Commerce*
      *and Industry Association of New Jersey*

Harris N. Feldman
Parker McCay
9000 Midlantic Drive
Suite 300
Mount Laurel, NJ 08054

      *Counsel for Amicus Appellee Casino Association of New Jersey*

————————

OPINION*

————————

**ROTH**, Circuit Judge

Sam A. Antar, a self-described problem gambler, initiated a New Jersey Consumer Fraud Act (CFA) and common-law negligence action against several casino and online gaming owners and operators. He alleges that the defendants' employees engaged in unconscionable business conduct and breached a duty of care they owed to him when they enticed him to gamble through dozens of bonuses, credits, deposit matches, and incentives—despite knowing that he is a compulsive gambler. The District Court granted the defendants' motions to dismiss. Because Antar failed to state plausible CFA or negligence claims, we will affirm the District Court's order.

**I.[1]**

In 2019, Antar began gambling at casinos in New Jersey and via online gaming platforms owned or operated by BetMGM, LLC; MGM Resorts International, Inc.; Entain plc; and Marina District Development Company, LLC d/b/a/ The Borgata Hotel Casino and Spa. Soon thereafter, Borgata invited Antar to become a VIP MGM Rewards "NOIR" member. Due to his membership status, Antar had a designated host, whose job

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We write for the parties and therefore recite only those facts necessary to our disposition.

was to retain VIP customers and maximize profits earned from them. From June 2019 through January 2020, two different employees assumed the role of Antar's personal VIP host. During this timeframe, Antar and his host communicated frequently over the phone, via email and through more than 1,800 text messages.[2] The communications involved bonuses, incentives, and promotions to encourage Antar to continue to gamble. On July 18, 2019, alone, Antar exchanged 47 text messages with his host after he communicated that "he was going to stop gambling."[3] Antar and his hosts continued to exchange text messages (and Antar continued to gamble) until mid-January 2020. In total, Antar gambled more than $24 million and exceeded 100,000 online bets.

As internet gaming employees who have direct customer contact, the VIP hosts received state-mandated training authorized under the Casino Control Act (CCA) to recognize signs that a customer has a gambling problem.[4] Antar contends that because of

---

[2] App. 11–12 (Vol. 2).
[3] App. 14 ¶ 123 (Vol. 2).
[4] N.J.A.C. 13:69O-1.2(x) provides that:

> All Internet gaming operators with employees who have direct contact with patrons via phone, e-mail, electronic chat, or other means, shall implement training for those employees, at the start of their employment and at regular intervals thereafter, addressing areas set forth in (y)1 through 3 below. If the training requirement under this subsection follows the standards set forth by the Council on Compulsive Gambling of New Jersey it shall be deemed sufficient.
>> 1. Recognizing the nature and symptoms of problem gambling behavior and how to assist players in obtaining information regarding help for a gambling problem and self-exclusion programs;
>> 2. Responding to patrons who may disclose that they have a gambling problem; and
>> 3. Responding to reports from third parties, such as family members, about patrons who may have a gambling problem.

their training, his hosts recognized that he was a compulsive gambler based upon the amount of money he was gambling, how frequently he was gambling, and the fact that he continued to gamble larger and larger amounts in attempt to recoup his losses. The crux of Antar's argument is that, despite recognizing that he was a problem gambler, Antar's hosts relentlessly reached out to him to entice him to gamble, thus worsening his gambling addiction and resulting in personal, professional, and financial ruin.

In September 2022, Antar filed suit in New Jersey Superior Court against Borgata Hotel Casino and Spa; B Online Casino; BetMGM LLC; MGM Resorts International, Inc.; Entain plc; John Does 1-10; Mary Does 1-10; and XYZ Corporations 1-10 (Defendants).[5] BetMGM removed the case to U.S. District Court for the District of New Jersey under 28 U.S.C. §§ 1441(a) and 1446. In May 2023, Antar filed an amended complaint asserting three claims against the defendants: (1) CFA violations; (2) negligence; and (3) unjust enrichment. BetMGM filed a motion to compel arbitration, or alternatively, to dismiss the complaint. MGM and Borgata then filed their own motion seeking the same relief. Antar conceded dismissal of the unjust enrichment claim, thus, the District Court only considered the CFA and negligence claims. On January 31, 2024, the District Court granted both motions in a Letter Order holding that the CCA preempted

---

[5] Defendants contended that Borgata Hotel Casino and Spa and B Online Casino are not legal entities subject to suit. They noted, however, that Marina District Development Company, LLC d/b/a/ Borgata Hotel and Casino and Spa operates the Borgata. *See* Notice of Removal, ECF No. 1 ¶¶ 13, 15.

Antar's CFA claim, and, as for his negligence claim, that Antar "fail[ed] to show that

Defendants, as a matter of law, owed a duty to [him]."[6]  Antar appealed.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. 1332(a)(1).  We have

jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise de novo review of a

district court's ruling on a motion to dismiss.[7]  In reviewing the District Court's order,

"we construe the complaint in the light most favorable to the plaintiff, accept all 'well-

pleaded factual allegations' as true, and examine whether the complaint contains

'sufficient factual matter . . . to state a claim for relief that is plausible on its face.'"[8]

## III.

### A.  CFA Claim

To state a CFA claim, a plaintiff must allege:  "1) unlawful conduct by defendant;

2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful

conduct and the ascertainable loss."[9]  Unlawful conduct covers three types of practices:

"affirmative acts, knowing omissions, and regulation violations."[10]  If a CFA violation is

based upon an affirmative act, "the plaintiff need not prove that the defendant intended to

---

[6] *Antar v. Borgata Hotel Casino & Spa, LLC*, No. CV 22-05785, 2024 WL 1672280, at *1, *4 (D.N.J. Jan. 31, 2024).

[7] *Child.'s Health Def., Inc. v. Rutgers, the State Univ. of New Jersey*, 93 F.4th 66, 74 (3d Cir. 2024), *cert. denied sub nom. Child.'s Health Def. v. Rutgers, the State Univ. of New Jersey*, 144 S. Ct. 2688 (2024).

[8] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

[9] *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009).

[10] *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

commit an unlawful act."[11]  The CFA deems six types of affirmative acts unlawful:

"unconscionable or abusive" commercial practices, "deception, fraud, false pretense,

false promise, [and] misrepresentation."[12]  The CFA does not define unconscionability,

but New Jersey's Supreme Court has described it as "an amorphous concept obviously

designed to establish a broad business ethic" and as implying a "lack of 'good faith,

honesty in fact and observance of fair dealing.'"[13]  The drafters left the term undefined

with the expectation that courts would "interpret it liberally so as to effectuate the public

purpose, and to pour content into it on a case-by-case basis."[14]

While a CFA violation does not require that the plaintiff was *actually* misled or

deceived, "[t]he *capacity to mislead* is the prime ingredient of *all* types of consumer

fraud."[15]  New Jersey "courts have been careful to constrain the CFA to 'fraudulent,

deceptive or other similar kind of selling or advertising practices.'"[16]  Antar asserts that

the defendants engaged in unconscionable business practices but cannot show that the

communications from his VIP hosts had "the capacity to mislead" as required by the

CFA.[17]  In his supplemental brief, Antar argues that through "dozens of solicitations[,]"

"the Defendants calculated to *mislead* and *deceive* him into continuing to deposit money

---

[11] *Id.*

[12] N.J.S.A. § 56:8-2.  The New Jersey Legislature added "unconscionable" commercial practices to the CFA's definition of "unlawful practice" in 1971.  *Cox*, 647 A.2d at 460.

[13] *Cox*, 647 A.2d at 462 (quoting *Kugler v. Romain*, 279 A.2d 640, 651–52 (N.J. 1971)).

[14] *Kugler*, 279 A.2d at 651.

[15] *Cox*, 647 A.2d at 462 (quoting *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977) (emphasis added)).

[16] *D'Agostino v. Maldonado*, 78 A.3d 527, 540 (N.J. 2013).

[17] *Cox*, 647 A.2d at 462.

and gamble on its platform."[18]  He does not explain how any of the dozens of
communications he lists in his complaint were misleading.  Antar was fully aware that
the text messages from his VIP hosts offering bonuses, credits, and deposit matches were
exactly as the hosts represented—enticements to continue to gamble.[19]  Following New
Jersey Supreme Court precedent, Antar fails to plead that the defendants engaged in
unconscionable business conduct under the CFA.[20]

Antar's claim also fails on the ascertainable loss prong.  Establishing an
ascertainable loss under the CFA requires a plaintiff to prove "either an out-of-pocket
loss or a deprivation of the benefit of one's bargain."[21]  An out-of-pocket loss is
determined by calculating "the difference between the price paid and the actual value
received," whereas damages resulting from the deprivation of the benefit of one's bargain
are represented by "the difference between the price paid and the value of the property
had the representations been true."[22]  A loss under the CFA is ascertainable when it is
"quantifiable or measurable."[23]  Antar's Amended Complaint asserts that, "As a result of

---

[18] Appellant's Supp. Br. 3 (emphasis added).

[19] *Compare Zaman v. Felton*, 98 A.3d 503, 517–18 (N.J. 2014) (finding no
"unconscionable commercial practice" under the CFA because there was no evidence
plaintiff "was deceived with respect to the terms or consequences of the parties'
agreements"), *with D'Agostino*, 78 A.3d at 533, 540 (affirming trial court's ruling that the
defendant did engage in an "unconscionable commercial practice" because "the parties'
transaction was effected by 'one-sided and misleading documents'").

[20] Defendants argue and the District Court agreed that Antar's "CFA claim is preempted
by the CCA." *Antar*, No. CV 22-05785, 2024 WL 1672280, at *2.  We need not reach
this issue because we find that Antar does not plausibly state a CFA claim.

[21] *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 467 (N.J. 2024).

[22] *Id.* (quotation marks omitted).

[23] *Id.* (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005)).

Defendants' misconduct, the Plaintiff suffered ascertainable loss."[24]  However, the complaint does not go beyond this conclusory statement.  Antar did not plead the amount of the loss, nor did he provide a means for calculating the alleged loss.  Indeed, the only dollar figure Antar provides is that his *total* "gambling activity exceeded $24 million."[25]

In his supplemental brief, Antar argues that his losses "are precisely quantifiable and measurable[,]" and comprise the "out-of-pocket amounts deposited and lost by Plaintiff as the result of Defendants' enticements between 2019 and January 2020."[26]  But as we recognized in *Hakimoglu v. Trump Taj Mahal Assocs.*,[27] gambling losses "present almost metaphysical problems of proximate causation . . . and under the prevailing rules and house odds, 'the house will win and the gamblers will lose' anyway in the typical transaction."[28]  Antar does not explain how the court would be able to differentiate the losses he suffered as a result of the defendants' alleged conduct versus those losses he suffered as a natural result of playing a game where the odds are stacked against the player.

Attempting to evade this conclusion, Antar argues that the "goods or services he received [from Defendants] were worthless[,]" because "[a]s an addicted gambler, there was no result other than that he would lose all monies he was induced to deposit with the

---

[24] App. 25 (Vol. 2).
[25] App. 5 (Vol. 2).
[26] Appellant's Supp. Br. 4.
[27] 70 F.3d 291 (3d Cir. 1995).
[28] *Id.* at 294 (holding that casinos do not owe a duty of care to patrons who incur gambling losses after being overserved with alcohol).

Defendants."[29]  Antar's argument, while creative, is not supported by controlling

precedent.  Where plaintiffs "purchase[] non-defective, conforming goods with no

objective, measurable disparity between the product they reasonably thought they were

buying and what they ultimately received[,]" they cannot claim an ascertainable loss.[30]

Each time Antar placed a bet through the defendants' platforms, what he received in

return was not "worthless,"[31] rather, he received exactly what he thought he was

purchasing—a gambling experience where winning was not guaranteed.

### B.  Negligence Claim

To prevail on a negligence claim, a plaintiff must prove the existence of "a duty of

care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury

to the plaintiff proximately caused by the breach, and damages."[32]  The existence and

"scope of [a duty of care] are generally questions of law for a court to decide."[33]  In

addition to considerations of fairness and public policy, New Jersey's Supreme Court has

identified "the relationship of the parties, the nature of the attendant risk, the opportunity

and ability to exercise care, and the public interest in the proposed solution" as pertinent

factors to determine whether a duty of care exists.[34]  Courts applying New Jersey law

have consistently rejected imposing a duty of care on casinos towards compulsive

---

[29] Appellant's Supp. Br. 4.

[30] *Robey*, 311 A.3d at 467.

[31] Appellant's Supp. Br. 4.

[32] *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014).

[33] *Id.*

[34] *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1116 (N.J. 1993).

gamblers.[35]  Antar offers no caselaw to the contrary.  In fact, courts across the country

that have considered the issue have uniformly rejected imposing such a duty on casinos.[36]

Moreover, "[i]n the absence of a common-law basis, courts have been reluctant to

imply a private right of action for money damages in favor of casino patrons[,]" given the

CCA's "elaborate regulatory scheme" over New Jersey's casino and gaming industry.[37]

The Legislature crafted the CCA to be "comprehensive and minutely elaborate,"[38] yet the

act "provide[s] only limited civil remedies."[39]  We have recognized that the New Jersey

---

[35] *See Harrah's Atl. City Operating Co. v. Dangelico*, No. A-2158-17T3, 2019 WL 1869008, at *2 (N.J. Super. Ct. App. Div. Apr. 26, 2019) (affirming that a casino did not owe a self-described compulsive gambler a duty of care to deny him credit); *Taveras v. Resorts Int'l Hotel, Inc.*, No. CIV. 07-4555(RMB), 2008 WL 4372791, at *1–2, *4 (D.N.J. Sept. 19, 2008) (rejecting a plaintiff's argument that a casino breached its duty of care to her by offering her numerous incentives to gamble, thus facilitating her gambling addiction); *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998), *aff'd*, 182 F.3d 909 (4th Cir. 1999) (same).

[36] *See Allen v. Caesars Ent. Corp.*, No. 4:23-CV-00989-MTS, 2023 WL 7181654, at *3 (E.D. Mo. Nov. 1, 2023) (no reason to believe "that the Supreme Court of Missouri would recognize a duty by casinos to protect patrons from developing a habit of going to a casino daily" (cleaned up)); *Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 733 (7th Cir. 2003) (Indiana law does not impose duty of care on casinos over "compulsive gamblers"); *Stevens v. MTR Gaming Grp., Inc.*, 788 S.E.2d 59, 66 (W.Va. 2016) (casinos with video lottery terminals have no duty of care "to protect users from compulsively gambling"); *NOLA 180 v. Harrah's Operating Co.*, 94 So. 3d 886, 889 (La. Ct. App. 2012) (casino has no "duty to identify and recognize compulsive gamblers"); *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1124 (Ind. 2010) (Indiana's regulatory scheme over riverboat gambling abrogated any common law claim "against casinos for damages resulting from enticing patrons to gamble and lose money at casino establishments"); *Logan v. Ameristar Casino Council Bluffs, Inc.*, 185 F. Supp. 2d 1021, 1025 (S.D. Iowa 2002) (casino had no common law duty to prevent plaintiff from "drinking and gambling" excessively).

[37] *Campione v. Adamar of New Jersey, Inc.*, 714 A.2d 299, 309 (N.J. 1998).

[38] *Knight v. City of Margate*, 431 A.2d 833, 836 (N.J. 1981).

[39] *Miller v. Zoby*, 595 A.2d 1104, 1110 (N.J. Super. Ct. App. Div. 1991); *see also* N.J.S.A. § 5:12-127.

Legislature limited private claims by design to balance the CCA's dual purposes: "the protection of gambling patrons and the protection of the financial viability of the casino industry."[40]  Recognizing that New Jersey does not impose a duty of care on casinos over problem gamblers, statutorily or through caselaw, the District Court properly dismissed Antar's negligence claim.

## IV.

For the foregoing reasons, we will affirm the District Court's order dismissing the complaint.

---

[40] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 189 (3d Cir. 2000); *see also* N.J.S.A. § 5:12-1b(13).  Notably, the CCA "does not authorize private litigants to initiate claims for money damages before the [Casino Control Commission,]" rather, the commission "is limited to requiring restitution and imposing administrative sanctions" on casinos and gaming operators.  *Campione*, 714 A.2d at 307.